The STATE of Ohio, Appellee,

v.

WEST, Appellant.

[Cite as *State v. West,* 167 Ohio App.3d 598, 2006-Ohio-3518.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 05CA805.

Decided June 30, 2006.

600

Kelly & Wallace Co., L.P.A., Michael P. Kelly, and Bruce S. Wallace, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Rocky A. Coss, Assistant Prosecuting Attorney, for appellee.

---

HARSHA, Presiding Judge.

{¶ 1} After pleading no contest to one count of murder, Eric West appeals from a judgment of conviction for the stabbing death of his maternal aunt. West contends that the juvenile court abused its discretion in transferring jurisdiction over him to the general (adult) division of the common pleas court for criminal prosecution. He argues that the totality of the evidence presented to the juvenile court demonstrates that he is amenable to treatment and rehabilitation in a juvenile treatment facility, that there is sufficient time for his rehabilitation in the juvenile justice system, and that there is a reasonable assurance of public safety upon his release from the juvenile system. Because the court weighed the appropriate statutory factors in deciding whether to transfer its jurisdiction and because its findings have some factual and rational basis in the record, we hold that the court did not abuse its discretion in ordering West to be bound over to the adult court for prosecution.

## I. FACTS

{¶ 2} In August 2003, 14–year–old Eric West was spending the night with his maternal grandparents, with whom he had lived parttime for the previous year and a half. West lived the remainder of the time with his mother; he had little, if any, contact with his father. During the evening, West wanted to visit a friend but was not allowed to do so because his maternal aunt, her husband, and their three young children were visiting and spending the night with West at his grandparents' home.

{¶ 3} West apparently spent the evening playing violent video games and talking to his friend on the telephone. Sometime around midnight, West fatally stabbed his aunt several times with a large butcher knife while she slept on the living room sofa. West's grandfather discovered the aunt's body on the living room floor and called 911. The coroner's report revealed that the victim had died as a result of multiple stab wounds in her chest and one stab wound in her neck that had severed her spinal cord.

{¶ 4} Law enforcement officers who arrived at the scene found West sitting on a neighbor's driveway with a considerable amount of blood on his body and

clothes. West was unresponsive and claimed that he had no memory of the events surrounding the murder. The officers took West into custody.

{¶ 5} The state initiated proceedings in juvenile court to transfer West's case to the general division of the common pleas court so that West could be tried as an adult for his aunt's murder. In accordance with Juv.R. 30(A), the juvenile court held a hearing to determine whether there was probable cause to believe that West had committed murder. Upon finding probable cause, the court ordered a full investigation and scheduled a hearing under Juv.R. 30(B) to determine whether West was "amenable to care or rehabilitation" in the juvenile justice system.

{¶ 6} Following the amenability hearing, the juvenile court concluded that West was not amenable to treatment and rehabilitation in the juvenile system and that the threat of harm to the community's safety required that he be confined past the age of 21. The juvenile court relinquished its jurisdiction over West and transferred the case to the adult court's jurisdiction.

{¶ 7} After the transfer and his indictment, West ultimately entered a plea of no contest to one count of murder. He received a sentence of 15 years to life imprisonment.

## II.  ASSIGNMENT OF ERROR

{¶ 8} West appeals from the judgment of conviction and sentence, raising one assignment of error:

> The trial court erred to the prejudice of defendant-appellant in ruling that defendant-appellant was not amenable to treatment within the juvenile system and in transferring this matter to adult court.

{¶ 9} West asserts that the juvenile court's finding that he is not amenable to rehabilitation within the juvenile system is not supported by the totality of the evidence and, thus, the court abused its discretion in transferring jurisdiction of the case to the adult court.

## III.  JUVENILE COURT JURISDICTION/TRANSFER

{¶ 10} Juvenile courts have exclusive jurisdiction over any case involving a person who is alleged to be delinquent for having committed an act when the person was under 18 years old and the act would constitute an offense if committed by an adult. R.C. 2152.03; R.C. 2152.10; *State v. Wilson* (1995), 73 Ohio St.3d 40, 43, 652 N.E.2d 196. It is beyond dispute that the juvenile court has wide latitude to retain or relinquish its jurisdiction over a juvenile. *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181; *State v. Carmichael* (1973), 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568, paragraphs one and two of the

syllabus. As long as the court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the trial court abused its discretion in deciding whether to transfer jurisdiction. See R.C. 2152.12(B); *Watson*, 47 Ohio St.3d at 95–96, 547 N.E.2d 1181; *State v. Douglas* (1985), 20 Ohio St.3d 34, 36–37, 20 OBR 282, 485 N.E.2d 711; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 535–536, 679 N.E.2d 321. The appropriate test is not whether we would have reached the same result; rather, the question is whether the court abused the discretion that the legislature has provided it. Id. at 535, 679 N.E.2d 321. If there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence.

{¶ 11} Under R.C. 2152.12(B), the juvenile court has discretion to transfer its jurisdiction over a juvenile to the adult court for further proceedings if the juvenile court finds that (1) the juvenile was at least 14 years old at the time of the act charged, (2) probable cause exists that the juvenile committed the act charged, and (3) the juvenile is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require that the juvenile be subject to adult sanctions. Because the first two requirements were clearly satisfied, this appeal focuses upon the third requirement.

### A. Amenability to Care or Rehabilitation

{¶ 12} Numerous witnesses testified at the hearing, including two court-appointed psychiatrists who had evaluated West. The psychiatrists testified to various psychological, social, and emotional problems that they identified West as having, and they described the types of services and treatments that would benefit West. Both psychologists opined that West is amenable to treatment and rehabilitation within the juvenile system.

{¶ 13} At the conclusion of the hearing, the juvenile court acknowledged the psychologists' opinions regarding West's amenability to treatment and rehabilitation within the juvenile system. The court observed, however, that neither psychologist had made a specific diagnosis of West's psychological condition, neither psychologist had firmly indicated that West could receive the recommended treatments in the juvenile system, and neither psychologist's written report had directly addressed the danger to the community's safety upon West's release from the juvenile system. The court further noted that the supervising psychologist at a juvenile treatment facility testified that a juvenile's participation in treatment programs is voluntary and a juvenile treatment facility would not give treatment or medication to a juvenile in the absence of a diagnosis.

{¶ 14} In accordance with R.C. 2152.12(B), the court next considered and weighed applicable factors in R.C. 2152.12(D) and (E) to determine whether jurisdiction over the case should be transferred to the adult court. The factors in favor of a transfer are:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

The factors weighing against a transfer are:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 15} In its assessment, the court made the following pertinent findings. The court found that West brutally and viciously murdered the victim with a butcher knife while she slept in the home of her parents, who are West's grandparents. The court found that the victim, West's aunt, neither facilitated nor provoked West's acts; rather, it appeared that West was upset about having his plan to visit his friend disrupted due to the visit of his aunt and her family. The court found that West had a callous indifference and utter disregard for human life.

{¶ 16} The court determined that West had not been previously adjudicated a delinquent or subject to sanctions in the juvenile system. But the court found that West had discipline problems in school that had resulted in his suspension. The court noted that West's behavioral problems in school included possessing a knife at school, creating a "hit list" of individuals he considered for possible retaliation, and stating that he would kill someone. The court further noted that the school's principal had recommended that West have counseling, but West never pursued that recommendation.

{¶ 17} Based upon the competency and psychological reports presented in this case, the court found that West has adequate mental capacity, has no disability from any mental illness, and is "emotionally, physically, and psychologically mature enough to be transferred as an adult."

{¶ 18} Weighing its findings, the juvenile court concluded that West is not amenable to treatment and rehabilitation in the juvenile system, there is insufficient time to rehabilitate West within the juvenile system, and there would be great harm to the public and the safety of the community if West were to be discharged from confinement at age 21.

## 1. The Existence of a Specific Diagnosis

{¶ 19} West argues that several of the juvenile court's findings are contradicted by evidence that West is amenable to treatment and rehabilitation within the juvenile system. First, West challenges the court's finding that the court-appointed psychologists who evaluated him did not make a diagnosis of his psychological condition and, therefore, he would not receive treatment or medication in a juvenile facility. West argues that the psychologists' reports and testimony are "overflowing" with assessments describing and defining the nature of West's problems and the treatments he would require. West further argues that the juvenile facility psychologist described treatments that are available in the juvenile justice system.

{¶ 20} However, both court-appointed psychologists acknowledged that they did not make a specific diagnosis of West's psychological condition. The juvenile-facility psychologist testified that in the absence of a diagnosis, there would be no course of medication or treatment. Although the court-appointed psychologists outlined the treatments that would benefit West and the juvenile-facility psychologist testified to available treatments in the juvenile justice system, all three psychologists agreed that a juvenile's participation in treatment programs is voluntary—the juvenile cannot be forced to participate. Based on our review of the record, we conclude that this evidence supports the court's finding about the lack of a diagnosis and its impact upon treatment.

## 2. Assessment of the Risk of Harm

{¶ 21} West next challenges the court's finding that the court-appointed psychologists' written reports did not address the risk of harm to the public upon his release from the juvenile system. West argues that the psychologists must have decided this issue in his favor because they were aware of his behavioral and psychological problems when they concluded that he would be amenable to treatment and rehabilitation in the juvenile system.

{¶ 22} At the hearing, one of the court-appointed psychologists conceded that her written report does not directly offer any guidance on West's risk of harm to others upon his eventual release, but she testified that she believes his risk of harm will decrease "to a significant level" while he is in treatment. Likewise, the report of the other court-appointed psychologist did not directly address West's future risk of harm to others and instead indicated that he expects West to have continuing conduct problems in adulthood. Thus, the record has some basis for the court's finding that the reports do not adequately address the potential risk of harm to the public upon West's release from the system.

## 3. Sufficiency of Time for Rehabilitation

{¶ 23} The third finding that West challenges is the court's determination that there is insufficient time to rehabilitate West before his release from the juvenile system. West argues that his relatively young age, evidence that he is cooperative and mannerly, and the experts' opinions that he can be rehabilitated within the juvenile system all support a finding that sufficient time exists to rehabilitate him in the juvenile justice system.

{¶ 24} Even though West's relatively young age favors his retention in the juvenile system, the juvenile court could have reasonably concluded that the nature and seriousness of the offense weigh against it. The more serious the offense, the less amenable the juvenile will be to rehabilitation in the juvenile system. *Watson*, 47 Ohio St.3d at 95, 547 N.E.2d 1181; *State v. Lopez* (1996), 112

Ohio App.3d 659, 662, 679 N.E.2d 1155; *State v. Lallathin*, Noble App. No. 299, 2003-Ohio-3478, 2003 WL 21500290. Moreover, "the facts of the crime charged are pertinent in determining whether the juvenile is amenable to rehabilitation because they may contain revelations regarding his mental condition." *State v. Whisenant* (1998), 127 Ohio App.3d 75, 711 N.E.2d 1016.

{¶ 25} The act here, murder, is one of the most serious acts that a juvenile can be charged with committing. The Ohio Supreme Court has determined that a juvenile who has committed a major felony such as murder may require more time for rehabilitation than a juvenile whose offense is less serious. *Watson*, 47 Ohio St.3d at 96, 547 N.E.2d 1181 (determining that there may not be sufficient time to rehabilitate a 15–year–old juvenile before his 21st birthday when the juvenile has been charged with beating a person to death, even though the juvenile is otherwise amenable to rehabilitation). See, also, *Lallathin*, Noble App. No. 299, 2003-Ohio-3478, 2003 WL 21500290, at ¶ 27–28.

{¶ 26} Furthermore, one of the court-appointed psychologists testified that West did not exhibit motivation to participate in counseling, he is very "avoidant," and there is a likelihood that he would actively resist therapeutic treatment. As previously noted, West could choose not to participate at all in any treatments available to him in the juvenile justice system.

{¶ 27} The severity and gruesome nature of the offense combined with evidence that West might resist treatments designed to facilitate his rehabilitation provide some factual basis for the court's finding that there is insufficient time to rehabilitate West before his release.

### 4. West's Maturity

{¶ 28} West next contends that the evidence presented to the court does not support its finding that he is "emotionally, physically and psychologically mature enough" to be transferred to the adult justice system. West asserts that several witnesses testified that he is "immature" and that the report of one of the psychologists found that he is "a shy, anxious, and socially withdrawn adolescent with limited skills for coping with stress and frustration." West argues that the finding of the court regarding West's maturity is inconsistent with this evidence.

{¶ 29} Although several witnesses at the amenability hearing testified that West was "immature," the assistant administrator at West's school testified that West was neither more nor less mature than the other junior high school boys. The two psychologists who evaluated West concluded he is of "average intelligence" and has "adequate intellectual abilities." The competency report prepared in this case indicates that West would be capable of assisting in his defense and that he was competent at the time of the act with which he was charged.

Thus, there is some factual basis in the record to support the court's finding that West was mature enough to be transferred to the adult court.

### 5. Experts' Conclusions

{¶ 30} Finally, West asserts that the juvenile court should have adopted the psychologists' conclusions that West is amenable to treatment and rehabilitation within the juvenile system. The juvenile court, however, is not bound by expert opinion, and may assign any weight to expert opinion that it deems appropriate. *Lopez*, 112 Ohio App.3d at 662, 679 N.E.2d 1155; *State v. Whiteside* (1982), 6 Ohio App.3d 30, 36, 6 OBR 140, 452 N.E.2d 332.

### B. Trial Court's Decision Affirmed

{¶ 31} In weighing the statutory factors in light of the facts of this case, the court gave significant weight to the severity and gruesome nature of the offense, which support the court's conclusion that West is not amenable to rehabilitation in the juvenile system. See *Watson*, 47 Ohio St.3d 93, 547 N.E.2d 1181; *Whisenant*, 127 Ohio App.3d 75, 711 N.E.2d 1016; *Lopez*, 112 Ohio App.3d 659, 679 N.E.2d 1155; *Lallathin*, Noble App. No. 299, 2003-Ohio-3478, 2003 WL 21500290. Further, the court placed great weight upon evidence of West's apparent indifference to human life and the likelihood that he would not participate in treatments that would facilitate his rehabilitation, both of which support the court's finding that West would pose a great risk of harm to the safety of the public if he were discharged at age 21. See, e.g., *Hopfer*, 112 Ohio App.3d at 330–331, 679 N.E.2d 321; *Whiteside*, 6 Ohio App.3d at 35–36, 6 OBR 140, 452 N.E.2d 332.

{¶ 32} Because the court weighed the appropriate statutory factors and the record contains credible evidence that supports its findings, we cannot say that the court abused its discretion in transferring jurisdiction over this case to the adult court, regardless of our own opinions on that issue.

### IV. THE DISSENT

{¶ 33} The dissent contends sua sponte that there are jurisdictional defects in the juvenile court stage of the proceedings that render the transfer void ab initio. While we concede that there were procedural irregularities, they did not divest the juvenile court of subject-matter jurisdiction. And since those irregularities have not been raised by the appellant, we deem them waived.

{¶ 34} The dissent also takes issue with the juvenile court's finding that West is not amenable to care and treatment in the juvenile justice system. As we have already noted, the juvenile court was not bound to accept the experts' opinions that West was amenable to care and treatment in the juvenile justice system.

Even if we disagree with the juvenile court judge, we should not substitute our judgment for his when there is some evidence to support it.

{¶ 35} Accordingly, we overrule West's sole assignment of error and affirm the judgment of conviction and sentence in this case.

Judgment affirmed.

ABELE, J., concurs.

McFARLAND, J., dissents.

McFARLAND, Judge, dissenting.

### I. Transfer Jurisdictional Defects

{¶ 36} I respectfully dissent. My review of the juvenile court record below reveals material defects that substantially affect the legality of the transfer of this case to the adult court. The majority opinion characterizes these as "procedural irregularities," but I cannot reach the same conclusion, particularly when considering the seriousness of the matter below. This dissent addresses the ineffective transfer of jurisdiction from juvenile court to the adult court and my belief that a proper transfer never occurred due to statutory noncompliance. In my view, subject-matter jurisdiction was originally valid in juvenile court based on the original complaint and continues to reside therein and not in adult court for the reasons below.

{¶ 37} In any bindover procedure, there is much interplay between Juv.R. 30, R.C. 2152.10, and R.C. 2152.12. The first defect deals with R.C. 2152.12(G), which provides:

The court *shall* give notice *in writing* of the time, place and purpose of any hearing held pursuant to division (A) or (B) of this section *to the child's parents,* guardian, or other custodian and to the child's counsel at least three days prior to the hearing.

(Emphasis added.) See, also, Juv.R. 30(D), which includes the same notice requirement, using the "shall" language. Therefore, as written, this provision is mandatory and compliance is required in order to achieve a proper transfer. The Ohio legislature had ample opportunity to delete the operative word "shall" or to amend the above language to permit notice to only one parent when it made sweeping changes to juvenile law in S.B. 179, but it has not done so, and the lower court had to comply with the notice provisions.

{¶ 38} My review indicates that because of the "shall" language in R.C. 2152.12(G), the court below had to give written notice of the preliminary and amenability hearings held on September 4, 2003, and May 17, 18, and 19, 2004, respectively, three days prior to the hearings. This notice should have been

given to the child's mother and father, who lived separately. The language pertaining to notices is very clear, and because the plural term "parents" is used, the court was required to give written notice to both the mother and the father. The record clearly demonstrates that the father of the child did not receive the required notice for the initial hearing on August 26, 2003.

{¶ 39} The record includes a document relative to the transfer hearings captioned "Notice of Hearing" and dated August 26, 2003. It reads, "Notice is hereby given that the above captioned matter will be before the Court on 08/27/2003 at 1:00 PM in the Adams County Court of Common Pleas, Juvenile Division. * * * This hearing is for purposes of preliminary hearing."

{¶ 40} The record reveals that the addresses at the bottom of the document indicated that this notice was sent to:

PROSECUTOR'S OFFICE
WEST, ERIC 17636 STATE RT 247 SEAMAN, OH. 45679
WEST, JULIE 17636 Sr 247, Seaman, Oh 45679
Joyce DeMint
Doug McIlwain

Beside the names of Eric and Julie West is the handwritten notation "hand delivered." The names of Joyce DeMint and Doug McIlwain are also handwritten, while the other names were typed. The father of the child, David West, is not listed on the document and, based on the record, did not receive any notice of this hearing. However, by a journal entry time stamped August 27, 2003, this hearing was continued to September 4, 2003, due to a change in counsel for the child. That same entry states that the child appeared with his mother, Julie West, but makes no reference to his father being present or whether he had received any written notice. Therefore, in my view, the noncompliance with the "shall" language of the notice statute means that an effective transfer of jurisdiction to adult court never was completed. This conclusion is reinforced by the language in the original complaint, which indicates that the "father information [was] not provided."

{¶ 41} The record next includes what appears to be a carbon copy of another document entitled "Notice of Hearing," which is dated August 27, 2003, and includes the same language mentioned earlier and indicates that a hearing would be held on September 4, 2003, at 1:30 P.M. for purposes of "Preliminary" or the initial probable cause. At the bottom of this document, much like on the other "Notice of Hearing," it states:

PROSECUTOR'S OFFICE
WEST, ERIC 17636 STATE RT 247, SEAMAN, OH 45679
West, Julie 17636 Sr 247, Seaman, Oh 45679

West, David 443 N. Main Street, Georgetown, Ohio 45121.

{¶ 42} However, all the addresses are typed and there are no handwritten notes indicating that the documents were "hand delivered," as the prior notice had indicated. Further, there is no return of service in the form of a certified mail receipt or any proof of mailing in the record. The record does contain numerous subpoenas for witnesses for this hearing; however, none were issued for the child's parents and those issued do not have any return of service.

{¶ 43} Also, the judgment entry reflecting what occurred at the September 4 preliminary hearing and time stamped on September 9 indicates that the juvenile was present, as were "the parents of said juvenile." However, the transcript of the same hearing states that only the mother of the child appeared.

{¶ 44} The transcript from this hearing states, "Mr. West is in the courtroom this afternoon with his attorney, Mr. McIlwain, *his mother,* and the State of Ohio * * *." (Emphasis added.) Therefore, discounting the boilerplate language of the entry and relying on the transcript, it is clear that the child's father, David West, did not appear.

{¶ 45} Now we move to the amenability hearing that took place on May 17, 18, and 19, 2004. For this amenability hearing, R.C. 2152.12(G) also applies and requires the court to again give the mandatory written notices to the parents, three days prior to any hearing. The only document in the record indicating when this hearing would take place is a journal entry, time stamped April 27, 2004, which states that "it is hereby ordered that the AMENABILITY HEARING is hereby rescheduled for the 17th AND 18th DAYS OF MAY, 2004."

{¶ 46} The entry states that "the clerk is instructed to deliver a copy of this Entry to all parties necessary herein," but the record is silent as to any "Notice of Hearing" as previously used for the preliminary hearing or any carbon copies of those notices. The record also does not contain any return of service of the journal entry by any means, i.e., by hand delivery, certified mail, or regular mail with proof of mailing. Further, no "Notice of Hearing" appears anywhere in the record for the amenability hearing, unlike the document that followed the entry for the preliminary hearing.

{¶ 47} A review of the journal entry from the amenability hearing held on May 17, 18, and 19, 2004, time stamped on May 19, reflects that the hearing "was attended by the juvenile, his mother (the father having been notified, but failed to appear), Attorney Doug McIlwain and the State of Ohio * * *." The entry fails to reflect the mode of communication by which the father had been notified of the

hearing. Further, unlike the previous hearings, there is nothing in the record to document whether notices were sent out.[1]

{¶ 48} Based on the foregoing, the court failed to comply with the mandatory notice provision of R.C. 2152.12(G), specifically as to the child's father. The court in *State v. Taylor* (1985), 26 Ohio App.3d 69, 71, 26 OBR 243, 498 N.E.2d 211, held that "the notice of hearing * * * are mandatory requirements, which cannot be waived by the juvenile by failing to object to non-compliance." The court held that the notice provisions were jurisdictional, stating, "[T]he juvenile court, failing to comply with the notice of hearing provisions of R.C. 2151.26 [now 2152.12], was without jurisdiction to bind the defendant over to the criminal, or general division of the common pleas court and the latter was without jurisdiction to proceed on an indictment against him." Id. at 72, 26 OBR 243, 498 N.E.2d 211. See, also, Giannelli & Yeomans, Ohio Juvenile Law (2005 Ed.) 267, 268, Section 22:13.

{¶ 49} The state's motion to transfer this case to the adult court was based upon R.C. 2152.10(B) and did not specifically cite Juv.R. 30. However, in my view, it is important to note that Juv.R. 30(D) specifically states, "Notice in writing of the time, place, and purpose of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian or other custodian and the child's counsel at least three days prior to the hearing, unless written notice has been waived on the record." This language only permits a "waiver on the record" of this notice provision.

{¶ 50} In my view, this language clearly states that a waiver of this rule must be made on the record. The majority's contention that the defects in the notice of hearing "were waived because they were not raised below" cannot be reconciled with the waiver permitted by this juvenile rule. There was no waiver by the juvenile, and the father never appeared at any hearings in the juvenile court. Therefore, no waiver could have been made by him.

{¶ 51} Further, R.C. 2152.12(G) still required notice to both parents of all hearings, including the first one. In light of the noncompliance with the notice

---

1. Juv.R. 4(A) could have been invoked to appoint counsel for the child's father, as a party, to provide a record as to his whereabouts. Counsel also could have provided relevant information as to any perfection of written service on him of the notice of hearings required under R.C. 2152.12(G). Juv.R. (4)(B) also could have been used, because it appears from the record that the interests of the child and the interests of his parents may be in conflict requiring appointment of a guardian ad litem for the child. Because the murdered victim was the child's maternal aunt, the very nature of this offense and the dynamics of the family raise serious concerns as to the ability of the child's mother to protect the best interests of the child. This is a classic case in which the record may be silent as to any conflict expressed between the child and his parents or the potential for that conflict, but the factual setting of this case would seem to dictate the necessity of a guardian ad litem for the child. See our recent decisions in *In re Slider,* 160 Ohio App.3d 159, 2005-Ohio-1457, 826 N.E.2d 356; and *In re Bostwick,* Ross App. No. 05CA2820, 2005-Ohio-5123, 2005 WL 2374933.

provisions of R.C. 2152.12(G) and Juv.R. 30(D), an effective transfer of jurisdiction was never achieved and, thus, the juvenile court retained all jurisdiction, to the exclusion of the adult court.

{¶ 52} Also, in *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196, the Ohio Supreme Court ruled that in the absence of a valid transfer, the juvenile court, not the criminal court, has jurisdiction, and further ruled that Wilson's subsequent adult conviction was "void ab initio." [2]

{¶ 53} A second potential defect lies within the charging instrument and the juvenile court's journal entry finding probable cause. In a discretionary bind-over, both R.C. 2152.12(B) and Juv.R. 30(A) discuss an allegation of delinquency in the complaint alleging that "the act would be an offense if committed by an adult" and that the "act would be a felony if committed by an adult." See R.C. 2152.12(B), quoted below, and Juv.R. 30(A). Specifically, Juv.R. 30(A) states that "the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult."

{¶ 54} The original complaint filed on August 18, 2003, does not allege that "the act would be an offense if committed by an adult" nor does it specify that the act would be a felony if committed by an adult. However, in the left margin of the complaint it reads "Aggravated Murder F–Life." Presumably, this language was included because the original complaint had a notice of the state's "intent to seek a blended sentence and to pursue a Serious Youthful Offender disposition" in this above-referenced matter.

{¶ 55} The court subsequently permitted an amendment to the complaint that apparently deleted the language referencing the serious-youthful-offender specification. No amended complaint was filed, so the exact deleted language is somewhat in question. The complaint also cites R.C. 2152.02.1, which does not exist and may be only a typographical error.[3]

{¶ 56} Also problematic is the boilerplate language in the trial court's judgment entry, time stamped September 9, 2004, journalizing the events of the preliminary hearing on September 4, 2004. The judgment entry states that "(1) The Court found that there were [sic] probable cause to believe that the juvenile committed

---

2. The Ohio Supreme Court subsequently reaffirmed *Wilson* in *Gaskins v. Shiplevy* (1995), 74 Ohio St.3d 149, 656 N.E.2d 1282, and further noted the potential of habeas corpus as a mechanism to challenge an improper transfer.

3. Because former R.C. 2151.02.1 dealt with the definition of a juvenile traffic offender and former R.C. 2151.02 defined a delinquent child and they are visually similar, it is a concern as to the intended section. However, this error is not fatal to the original exercise of jurisdiction by the juvenile court.

the act alleged, and that the act would be an offense, if committed by an adult." The court does not mention that the act alleged would be a "felony if committed by an adult," which is a necessary component to trigger a valid transfer of jurisdiction of the child below to the adult system. Otherwise, the child is still under the control of the juvenile court's subject-matter and personal jurisdiction.

{¶ 57} R.C. 2152.12(B) states:

"Except as provided in division (A) of this section, after a complaint has been filed *alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult,* the juvenile court at a hearing may transfer the case if the court finds all of the following: (1) the child was fourteen years of age or older at the time of the act charged. (2) There is probable cause to believe that the child committed the act charged. (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed."

{¶ 58} In my view, and in order to comply with R.C. 2152.12(B), the court should have made a finding that the offense alleged was in fact a felony, thus resulting in an effective transfer of jurisdiction. If there is nothing in the record and no testimony that the act alleged is a felony, there arguably is ambiguity on this issue especially with an amended complaint.

{¶ 59} Based on the foregoing, and because of the noncompliance with the bindover procedure, an effective transfer of jurisdiction never was achieved. Therefore, any transfer and subsequent indictment and conviction were void ab initio.

## II. Standard of Proof/Standard of Review

{¶ 60} Assuming, without conceding, that the majority opinion is correct and that no error was committed below as to notice provisions or that the notice provisions somehow were waived by the nonappearing father of the child, reversal is still appropriate in my view. This is because the trial court's transfer was based in part on the lack of "important" information that it stated was missing and because there is overwhelming evidence of the amenability of this child to the juvenile system.

{¶ 61} The standard of proof required for a discretionary bindover is somewhat disguised in R.C. 2152.12(B)(3), which reads as follows:

In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred.

This standard seems to suggest a balancing test akin to a mere preponderance-of-the-evidence standard, or a more-likely or more-probable-than-not standard.

{¶ 62} While some have concluded that substantial evidence is required, others adopt a clear-and-convincing standard. Still others claim that because a discretionary bindover is an "adjudicatory hearing," a standard of proof beyond a reasonable doubt is required.[4]

{¶ 63} While a higher standard may seem more appropriate than a mere balancing test, regardless of the standard of proof used by the trial court, it is axiomatic that the burden of production should lie with the state of Ohio.[5] Or, stated differently, because it is the state's motion seeking transfer to the adult system, it is inappropriate to place the burden on the juvenile as to his amenability. It is the state's duty to present sufficient evidence to show that the child is now not amenable to "care and rehabilitation" within the juvenile justice system.

{¶ 64} The United States Supreme Court, in *Kent v. United States* (1966), 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84, noted that the transfer of a juvenile to criminal court is a "critically important action determining vitally important statutory rights of the juvenile." It went on to say that a transfer hearing "must measure up to the essentials of due process and fair treatment." Id. at 562, 86 S.Ct. 1045, 16 L.Ed.2d 84. These constitutional standards have been discussed by Ohio courts as well. See *State v. Adams* (1982), 69 Ohio St.2d 120, 23 O.O.3d 164, 431 N.E.2d 326; *State v. Payne* (1997), 118 Ohio App.3d 699, 693 N.E.2d 1159 (holding that "[a] juvenile has due process rights and a right to fair treatment in the bindover process from juvenile court to criminal court"); *Taylor*, 26 Ohio App.3d 69, 26 OBR 243, 498 N.E.2d 211; *State v. Riggins* (1980), 68 Ohio App.2d 1, 22 O.O.3d 1, 426 N.E.2d 504; *In re Mack* (1970), 22 Ohio App.2d 201, 51 O.O.2d 400, 260 N.E.2d 619.

---

**4.** See Davis, Rights of Juveniles: The Juvenile Justice System (2d Ed.2004), Sections 7–17; *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *State v. Carmichael* (1973), 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568; see, also, IJA–ABA Standards Relating to Transfer Between Courts 39 (1980), Section 22:10, and Gannelli & Yeomans, Ohio Juvenile Law (2005 Ed.) 263, Section 22:10.

**5.** See *Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

{¶ 65} Also important to our analysis in this case is the commentary in *Breed v. Jones* (1975), 421 U.S. 519, 537, 95 S.Ct. 1779, 44 L.Ed.2d 346, that the court "has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." Also relevant is the court's language in *State v. Hopfer* (1996), 112 Ohio App.3d 521, 535, 679 N.E.2d 321, stating that the decision must be supported by the "totality of the evidence" and be consistent with that evidence.

{¶ 66} Lastly, we should be mindful of our standard of review in that an abuse-of-discretion standard requires a finding that the juvenile court's decision was without a reasonable basis, was arbitrary, or was unconscionable. See *Carmichael*, 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568.

{¶ 67} With these concepts in mind, we now must examine the juvenile court's findings and rationale for transferring the juvenile to the adult court. In my judgment, the trial court acted unreasonably and, therefore, abused its discretion by making its decision to transfer based on "important evidence" not in the record. It further seemingly ignored the quantum of consistent "expert" and "lay" evidence against the transfer.

{¶ 68} Specifically, R.C. 2152.12(B)(3) requires the court to find that the child is not amenable to "care" or "rehabilitation" within the juvenile system. Black's Law Dictionary, 8th Ed., defines "amenable" as "legally answerable; liable to be brought to judgment." Further, Black's Law Dictionary, 8th Ed., defines "care" as "serious attention" and defines "rehabilitation" as "[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes."

{¶ 69} Using these definitions in conjunction with R.C. 2152.12(D) through (E) and Juv.R. 30, it appears that the trial court has based its decision on improper inferences with no basis in the record. Specifically, in one portion therein, the trial court found that the child "has no disability from any mental illness."

{¶ 70} However, in another section when referring to the two testifying psychologists, the court stated that "both testifying psychologists were firm in their written findings that the juvenile was amenable to care and rehabilitation within the juvenile system, their testimony at the amenability hearing *left many questions unanswered,* and far from being firmly entrenched as their written reports were." (Emphasis added.) The court went on to say, "Further, *neither psychological report touched on the very important subject of the possible danger and safety of the community* in the juvenile returning to the community upon his release from the department of youth services. No psychological diagnosis was administered by either clinical psychologist." (Emphasis added.)

{¶ 71} These statements indicate that the court was lacking vital information that it felt was "important" in order to make the determination as to any illness the child might have, yet the court still concluded that the child "has no mental illness." In my view, this is an improper conclusion based on the evidence presented in the record. Further, if the court wanted or felt it needed more information or testimony on these important issues, it could have continued the hearing and asked the psychologists to supplement their reports and reconvene when those questions were answered. Lastly, the trial court's decision appears internally inconsistent, because the court could not likely make the finding that the child had "no mental illness" if no psychological testing had been administered by either clinical psychologist.

{¶ 72} I also see merit in appellant's argument that if this child has no illness, it is hard to conclude that he cannot be rehabilitated within the juvenile justice system. If there is nothing to "treat," then there is a valid claim that the juvenile system is a viable option even if the treatment programs are voluntary as the court so found. As to the voluntary nature of treatment, any juvenile court can order a child to comply with whatever treatment it deems appropriate. But again, if there is nothing to treat, then the voluntary nature of the program is irrelevant.

{¶ 73} Further, the court below had no "track record" for this child within the juvenile system, i.e., no prior delinquency record, history of community control, or conduct after release from the Ohio Department of Youth Services. Therefore, to conclude that the child would not participate in treatment programs is purely speculation at best. This is particularly true in light of the testimony during the amenability hearing from the detention supervisor, who indicated that this child, while incarcerated in his facility, participated in what was available at that facility. This witness further stated, "Eric's been cooperative. We've had no serious problems with Eric since he's been in the facility."

{¶ 74} The conclusion that "it would appear that the juvenile is emotionally, physically and psychologically mature enough to go to adult system," is in direct contrast with the evidence below. For example, one of the psychologists concluded that the child is "a shy, anxious, and socially withdrawn adolescent with limited skills for coping with stress and frustration."

{¶ 75} Also, two of the psychologists who evaluated the child concluded that he was of "average intelligence" and has "adequate intellectual abilities." These conclusions must be construed in the context of a 14–year–old juvenile. This inconsistency is supported by the school official's testimony that this child was neither more nor less mature than the other junior high school boys.

{¶ 76} Uniquely relevant to our review is the state's expert who made the following conclusion during his testimony at the amenability hearing:

"Q: And, uh, do you have an opinion to a reasonable degree of scientific certainty whether or not Eric is amenable to care and rehabilitation in the juvenile justice [system]?

"A: Yes, I do.

"Q: And, what is that opinion?

"A: I think he's amenable."

{¶ 77} In light of the totality of this testimony, it seems unreasonable to conclude that this 14–year–old child has the emotional, physical, and psychological maturity to survive the adult system, especially when there is no evidence as to the child's physical capabilities.

{¶ 78} The majority has correctly stated that the juvenile court has wide latitude to retain or relinquish jurisdiction over a juvenile. *Watson,* 47 Ohio St.3d 93, 547 N.E.2d 1181. And it further is true that as long as the court does consider the appropriate statutory factors and there is some basis to support the court's findings, we should not conclude that it abused its discretion. *Watson,* supra. However, because the trial court based its conclusions on "important information" it expressly found to be lacking in the record, there was an abuse of discretion. By doing so, it deprived the juvenile of fundamental fairness during this critical stage in the proceeding below.

{¶ 79} In my opinion, the court below made impermissible inferences without support in the record. If important evidence was lacking from the evidence for the court to make a decision, then that hollowness should have been resolved prior to making a final decision to transfer. Fundamental fairness would dictate that the lack of important evidence used in weighing the required factors in R.C. 2152.12 was, at a minimum, unreasonable.

### III. Conclusion

{¶ 80} Based on due process and in fairness to the juvenile below, those unresolved important issues should have been construed in the juvenile's favor and against the state's motion to transfer. Had the trial court not found in the transfer entry that important "information" was lacking and emphasized that the nature of the offense "weighed heavily in favor of transfer," it might have passed my scrutiny.

{¶ 81} Here, reversal is required for two reasons. First, the notice defects in the juvenile court record rendered the transfer void ab initio. Second, even if statutory compliance was achieved, the "totality of evidence" and/or lack of important evidence demonstrated that the child was amenable to the juvenile justice system. Therefore, an abuse of discretion occurred.

{¶ 82} Thus, and based on the foregoing, I dissent.