[Cite as *State v. Blair*, 2017-Ohio-5865.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00180 |
| LIONELL BLAIR | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2016CR1255

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: July 17, 2017

APPEARANCES:

For Plaintiff-Appellant

JOHN D. FERRERO
STARK COUNTY PROSECUTOR
BY: KRISTINE BEARD
110 Central Plaza South, Ste. 510
Canton, OH 44702

For Defendant-Appellee

VICTORIA BADER
ASSISTANT PUBLIC DEFENDER
250 East Broad Street, Ste. 1400
Columbus, OH 43215

*Gwin, J.,*

{¶1}    Appellant Lionell Blair ["Blair"] appeals the June 30, 2016 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, Case No. 2016JCR00453 transferring jurisdiction of his case to the adult court.  After the case was transferred to the Stark County Court of Common Pleas, Blair entered a negotiated guilty plea to one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree.  (Stark County Court of Common Pleas, Case No. 2016CR1255).  The trial court sentenced him to six years in the Department of Corrections and Rehabilitation.  In exchange, the state agreed not to pursue Blair's Serious Youthful Offender sentence on a prior juvenile court case.

*Facts and Procedural History*

{¶2}    On March 9, 2016, a complaint was filed in the Stark County Juvenile Court, alleging that then 17-year-old, Lionell Blair was delinquent of one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree if committed by an adult.

{¶3}    On March 10, 2016, the state filed a Motion to Relinquish Jurisdiction asserting that Blair was not amenable to care or rehabilitation in the juvenile system.  The motion was set for both a probable cause hearing and an amenability hearing.

{¶4}    At the probable cause hearing, Blair stipulated to his date of birth as January 30, 1999. (T. Apr. 26, 2016 at 3).  The State called one witness, Trooper Dora Gonzales.

{¶5}    Trooper Gonzales is assigned to investigate crimes that occur at the Indian River Department of Youth Services Facility (DYS).  At the time of the felonious assault, Blair was serving time for an aggravated robbery with a firearm specification at Indian

River.  Trooper Gonzales testified that Blair and another juvenile resident, (Martin) got into a verbal altercation.  Blair claimed Martin was making disparaging remarks about his dead grandmother.  Blair assaulted Martin causing lacerations to his Martin's face and breaking Martin's jaw.  Because of the assault, Martin was treated at Mercy Medical Center where Martin got stitches in his face and had his broken jaw wired shut.  Trooper Gonzales testified that Blair admitted to assaulting Martin.  Blair further admitted that Martin did not assault Blair at any time.  (T. Apr. 26, 2016 at 12).

**{¶6}**  Upon hearing this testimony, the court held that the state had established probable cause to support that Blair had committed the offense of felonious assault.  The court set the matter for an amenability hearing and ordered a psychological evaluation.

**{¶7}**  On June 28, 2016, the court conducted an amenability hearing.  At the hearing, the state presented the testimony of two witnesses, Juvenile Probation Officer Lindsay Showalter and Doctor Erin Nicole Smith, and introduced Dr. Smith's psychological report into evidence.  (T. June 28, 2016 at 17-18; 37; State's Exhibit 3).

**{¶8}**  Showalter was Blair's probation officer from 2012 to 2015.  Blair was initially placed on probation after being found delinquent of having committed a status offense, unruly.  While on probation, Blair received counseling and case management at Phoenix Rising, his family received coordinated wrap around services, and he was given multiple trauma screens in an effort to improve his individual therapy.  Blair was given graduated sanctions including being placed on parental house arrest and electronically monitored house arrest.  While on probation, Blair's participation in the various programs was sporadic. Blair was also in and out of the juvenile attention center on several occasions for probation violations based on non-compliance with the terms of his probation including

failure to comply with court ordered counseling. (T. June 28, 2016 at 6-7). Showalter testified that none of the sanctions had any effect upon Blair's behavior. (Id.).

{¶9} Additionally, while on probation, Blair's school attendance was sporadic. When he was in school, Blair was insubordinate and disrespectful toward the teaching staff. Blair was expelled for bringing marijuana onto school grounds. Blair lied and stole from others. Teachers from the schools attempted to provide intervention but were unsuccessful due to Blair's attitude and behavior. (June 28, 2016 at 11-12).

{¶10} In December 2014, Blair received court placement at Rogers Children's Residential Center ["Rogers"]. Rogers is not a secure facility but provides youth with 24-hour supervision. Rogers is typically a 6-9 month program. At Rogers, Blair was to be provided with individual trauma based treatment services, anger management and group counseling. He was also to be coached in improving his social skills and independent living skills. 17 days after the placement at Rogers Blair went AWOL and was returned to the juvenile attention center. Rogers agreed to give him another chance in their placement program. Blair's placement was terminated when he went AWOL from Rogers for a second time in February 2015. (T. June 28, 2016 at 8).

{¶11} After leaving Rogers without consent, Blair was arrested in Lisbon, Ohio, on charges of theft and felonious assault. (T. June 28, 2016 at 9). Blair was convicted and remanded to Stark County for disposition. At disposition, Blair was ordered into the Residential Treatment Center ["RTC"]. RTC is a locked facility where Blair was to receive counseling, drug and alcohol education, anger management and life skills training. (Id. at 9). At RTC Blair's program participation was "rocky." Blair was involved in multiple assaults and was disrespectful to staff. (T. June 28, 2016 at 9). Eventually Blair

developed a working relationship with his counselor and earned enough points to have a home visit. (Id.). During the home visit, Blair went AWOL again and a warrant was issued for his arrest. While absent without leave, Blair committed another offense of violence-aggravated robbery with a firearm. (T. June 28, 2016 at 10). Blair was found delinquent for the new charges and given a blended sentence with the adult commitment stayed and a DYS commitment imposed. (T. June 28, 2016 at 47; Stark County Court of Common Pleas, Case No. 2016CR1255, Transcript of Plea and Sentencing Hearing, Aug. 31, 2016 at 14-15).

{¶12} Dr. Erin Nicole Smith, a licensed psychologist employed at Northeast Ohio Behavioral Health, performed Blair's psychological assessment. The psychological assessment involved examining dispositional factors, administering a Child Post Traumatic Disorder Symptom Scale and a youth's mental health exam to determine whether Blair could be rehabilitated in the juvenile justice system. (T. June 28, 2016 at 17; 23). During the evaluation, Blair was questioned about his family history, educational history, peer relationships, friendship history, criminal history and mental health symptoms.

{¶13} When he was young, Blair witnessed domestic violence perpetrated by his father against his mother. (State's Exhibit 3 at 3). When his parents separated, Blair, his mother, and his sisters moved frequently to escape the threat of continued physical violence at the hands of his father. As a result, Blair reported that he lived in at least six cities, in two different states throughout his childhood. At age 13, he resumed visitations with his biological father, who often used drugs and alcohol during their visits and encouraged Blair to do the same.

**{¶14}** Blair's life has been marked by severe trauma. In his young life, he experienced at least 11 traumatic life events. (State's Exhibit 3 at 8). Many of Blair's family members and friends are gang affiliated or have been incarcerated. Blair has witnessed his best friend's murder, witnessed another friend be hit by a car, had his own life threatened on multiple occasions, and has had a bullet removed from his body.

**{¶15}** Smith diagnosed Blair with Persistent Depressive Disorder and Dependent Personality Disorder. Further Blair exhibited signs of Post-traumatic Stress Disorder ["PTSD"]. Smith testified that Post Traumatic Stress Disorder in males tends to correlate with criminal activity. (T. June 28, 2016 at 19). Smith stated that Post Traumatic Stress Disorder is difficult to treat and treatment programs may take longer if the disorder has been present for an extended period of time without treatment.

**{¶16}** Dr. Smith gave an expert opinion as to whether Blair was amenable to treatment in the juvenile justice system. Smith stated that compared to the general population Blair has an increased risk for violence and future criminal activity. In support, Smith listed several factors from his history including caregiver disruptions and Blair's disregard for home rules; problematic school achievement; poor coping skills and a need for approval from other criminally involved peers; difficulty managing anger; difficulty trusting others; failure to take responsibility for his own actions; and, substance abuse. (T. June 28, 2016 at 22).

**{¶17}** Dr. Smith also considered the history of the extensive effort to provide Blair with intervention and treatment efforts including probation, home based treatment, court placement at Rogers and RTC and Blair's current DYS placement. Smith recognized that none of these efforts had any effect on Blair's rehabilitation. Dr. Smith stated, "He's kind

of got an unfortunate negative history of not being amenable to treatment." Furthermore, although during the sessions Blair appeared to indicate a willingness to make efforts and be amenable, treatment was likely to "take a long time"- "many years in a lifetime." (T. June 28, 2016 at 22; 24). In conclusion, Dr. Smith stated Blair was not amenable to rehabilitation in the juvenile justice system.

{¶18} At the hearing, Blair testified on his own behalf. Blair testified about his initial success in his daily routine at the DYS facility including individual counseling, anger management and substance abuse counseling. He testified that he refused to join a gang called "Heartless Felons" because, in Blair's words, anyone who was heartless couldn't be trusted. (T. June 28, 2016 at 42). The felonious assault that perpetuated the bind-over proceedings occurred despite his current incarceration and rehabilitative treatment efforts at DYS.

{¶19} On June 30, 2016, the Juvenile Court issued Findings of Fact and Conclusions of law. Pertinent to this appeal the Court found that Blair was not amenable to rehabilitation in the juvenile justice system. In the findings of fact, the court acknowledged that Blair has had a life full of stressful and traumatic events that has resulted in an extreme level of post-traumatic stress related symptoms. The court found that his criminal history includes violence and involvement with weapons. The court took into account Blair's history, Blair's testimony and the opinion of Dr. Smith that Blair was not amenable to rehabilitation in the juvenile justice system. In the conclusion of law, the court addressed the factors set forth in R.C. 2151.12 and Juv.R. 30. The court found that there were reasonable grounds that Blair is not amenable to care or rehabilitation within

a juvenile facility and that the community safety may require restraint that possibly extends beyond Blair's majority.

{¶20} The court further held that there were no relevant factors weighing against the transfer. Specifically the court held that while Blair could receive many beneficial services and treatment at DYS, "his past history does not demonstrate that he is open and committed to treatment and services." Furthermore, Blair, "knowing that he had a SYO blended sentence, with an adult sentence stayed, could still not manage to refrain from criminal behavior in DYS." The court granted the State's Motion to Transfer and ordered that Blair be transferred to the General Division of the Court of Common Pleas for prosecution as an adult.

{¶21} Upon transfer, Blair was indicted by the Stark County Grand Jury for one count of Felonious Assault a felony of the second degree. After indictment in the general division, Blair pleaded guilty to the offense as charged. The trial court sentenced him to six years in the Department of Corrections and Rehabilitation ("DRC"). (Stark County Court of Common Pleas, Case No. 2016CR1255, Transcript of Plea and Sentencing Hearing, Aug. 31, 2016 at 15). In exchange, the state agreed not to pursue his Serious Youthful Offender sentence on a prior juvenile court case. (Stark County Court of Common Pleas, Case No. 2016CR1255, Transcript of Plea and Sentencing Hearing, Aug. 31, 2016 at 14-15).

*Assignment of Error*

{¶22} Blair presents one assignment of error for our consideration:

{¶23} "I. THE JUVENILE COURT ABUSED ITS DISCRETION AND VIOLATED 17-YEAR-OLD LIONELL BLAIR'S RIGHT TO DUE PROCESS OF LAW WHEN IT

DETERMINED THAT HE WAS NOT AMENABLE TO TREATMENT IN THE JUVENILE SYSTEM, IN VIOLATION OF R.C. 2152.12(B); FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE 1, SECTIONS 10 AND 16, OHIO CONSTITUTION. (6/30/16 JUDGMENT ENTRY, P.9)."

*Law and Analysis*

**{¶24}** In his sole assignment of error, Blair contends that the Juvenile Court abused its discretion when it found that Blair was not amenable to treatment in the juvenile justice system.

*Standard of Review*

**{¶25}** An amenability hearing is a broad assessment of individual circumstances and is inherently individualized and fact-based. Thus, a juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system is reviewed by an appellate court under an abuse-of-discretion standard. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39, 40; *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14.

*Burden of Proof*

**{¶26}** R.C. 2152.12(D) lists the following factors that a juvenile court must consider in favor of transferring a juvenile to the general division of the common pleas court:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of Section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶27} The juvenile court must then weigh the factors in R.C. 2152.12(D) against the factors listed in R.C. 2152.12(E) that weigh against transfer of jurisdiction, including:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

**{¶28}** In addition to considering the factors listed in R.C. 2152.12(D) and (E), the juvenile court "shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination." R.C. 2152.12(C).

**{¶29}** What constitutes "reasonable grounds" for relinquishing jurisdiction under R.C. 2151.26(A)(3) is within the sound discretion after an investigation is made. *State v.*

*Carmichael*, 35 Ohio St.2d 1, 298 N.E.2d 568(1973). There is no requirement that each of the five factors in Juv.R. 30(E) is resolved against the child before the court enters a proper transfer order, so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment. *State v. Douglas*, 20 Ohio St.3d 34, 36, 485 N.E.2d 711(1985).

*Balancing the Factors*

{¶30} R.C. 2152.12 is silent with regard to how a juvenile court should weigh the factors in R.C. 2152.12(D) and (E). Thus, the juvenile court has the discretion to determine how much weight should be accorded to any given factor. *See State v. Morgan*, 10th Dist. Franklin No. 13AP–620, 2014–Ohio–5661, ¶ 37; *Accord, State v. Marshall,* 1st Dist. Hamilton No. C-150383, 2016-Ohio-3183, ¶15. "As long as the court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, [this court] cannot conclude that the trial court abused its discretion in deciding whether to transfer jurisdiction." *State v. West*, 167 Ohio App.3d 598, 2006–Ohio–3518, 856 N.E.2d 285, ¶ 10 (4th Dist.); *State v. Marshall, ¶15.*

{¶31} In *Kent v. United States*, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 1045 (1966), the United States Supreme Court held that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons therefor. The court held that the statement need not be formal or necessarily include findings of fact. The Court held the statement should be sufficient to demonstrate a full investigation had been made, the Court carefully considered the matter, and the order is specific enough to permit meaningful review.

**{¶32}** In *State v. Douglas*, 20 Ohio St.2d 34, 36, 485 N.E.2d 711 (1985) the Ohio Supreme court held in a per curiam opinion under a prior version of the transfer statute and juvenile rule regarding transfer no written findings regarding the findings were required. *See State v. Erwin,* 10th Dist. Franklin No. 09AP-918, 2012-Ohio-776, ¶14. In a footnote, the Supreme Court in *Douglas* noted that the juvenile court sufficiently stated its reasons for appellee's transfer as required by Juv.R. 30(G) although the juvenile court's journal entry relinquishing jurisdiction was couched in the conclusory language of R.C. 2151.26. [*Cf. State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶29, "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."].

**{¶33}** We are satisfied that the juvenile court's transfer order meets the requirements of R.C. 2152.12 and the constitutional mandates of due process.

**{¶34}** Blair contends the juvenile court abused its discretion in finding him not amenable to rehabilitation as a juvenile. Specifically, Blair argues the trial court abused its discretion because 1). The juvenile court did not consider how Blair had progressed in DYS since the incident or how he would fare with consistent long-term, intensive treatment at DYS; 2). Although not a specifically enumerated factor, the juvenile court did not consider how trauma affected Blair and mitigated against transfer; 3). The juvenile court did not consider what rehabilitative efforts could occur with the time remaining in the juvenile system and 4).The juvenile court did not consider how Lionell would fare in adult prison. [Appellant's Brief at 7].

**{¶35}** In the case at bar, there is competent credible evidence to establish, that the victim of the assault by Blair did not "induce or facilitate the act charged." R.C. 2152.12(E)(1); that Blair was the principal actor in committing the assault. R.C. 2152.12(E)(3); Blair did cause serious physical harm in committing the assault. R.C. 2152.12(E)(4); and Blair has previously been adjudicated a delinquent child. R.C. 2152.12(E)(5). In her report, Dr. Smith opined, "Lionell appears mentally and emotionally mature enough for a transfer of jurisdiction." State's Exhibit 3 at 12, ¶5. R.C. 2152.12(E)(6).

**{¶36}** At the time of the assault, Blair was under sanctions for a prior adjudication of delinquency and, specifically, had a suspended adult commitment under a blended sentence for aggravated robbery with a firearm specification. R.C.2152.12(D)(6). Blair did cause serious physical harm to Martin. R.C. 2152.12(D)(1); and Martin could not avoid the attack because he was also committed to DYS. R.C. 2152.12(D)(3). Blair's probation officer testified that none of the previous juvenile court sanctions had any effect upon Blair's behavior. R.C. 2152.12(D)(7).

**{¶37}** During the amenability hearing, the following exchange occurred between the Court and Dr. Smith,

> Q.　　Just a couple of questions for you. I think we've already touched on it but just to recap um since you're not able to tell us how long rehabilitation will take for Lionell you can't say that he won't be rehabilitated in that four year period right?
>
> A.　　I can say that it would…would be difficult. Yeah.

Q.      Um but if he were able to take advantage of that four years of rehabilitation it would be…would it be fair to say that it would be more likely that he would better assimilate into society after being released?

A.      I…I don't know the answer to that.  I don't know that I can speculate.  Um I think if he received the necessary treatment within that amount of time then it would be possible that he could have the self-confidence but I can't say for sure that…that that would happen.

T. June 28, 2016 at 35.  In her report, Dr. Smith specifically found, "7. There is not sufficient time to rehabilitate Lionell within the Juvenile Justice System." State's Exhibit 3, at 13.

{¶38}  Clearly, the trial court did weigh the factors for and against transfer and considered whether or not Blair could be rehabilitated within the juvenile court system. Although the trial court did not directly address the factors that weighed against transfer in its Judgment Entry, the trial court did hear Dr. Smith's testimony and reviewed Dr. Smith's report.  Thus, the trial court did not ignore the factors under R.C. 2152.12 in making its amenability determination.  See, State v. Marshall, 2016-Ohio-3184 at ¶17.

{¶39}  In a case cited by Blair, *State v. D.H.,* 2d Dist. No. 26383, 2015-Ohio-3259, ¶ 17, the Second District implied that a court considering relinquishing jurisdiction should have performed a detailed analysis of the programs available to rehabilitate the child in the juvenile system before concluding that the child could not be rehabilitated in the juvenile system.  While we agree that a court needs to genuinely consider the factors, and the record needs to reflect that fact consistent with R.C. 2152.12(B)(3), other courts have never gone as far as the Second District in directing the juvenile court's analysis.

*See, State v. Reeder,* 10th Dist. Nos. 15AP-203; 15AP-218, 2016-Ohio-212, 57 N.E.3d 458, ¶18; *State v. Marshall,* 2016-Ohio-3184, ¶15; *State v. Rice,* 12th Dist. Butler No. CA2016-01-005, ¶18, n. 2.

**{¶40}** "As long as the court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the [juvenile] court abused its discretion in deciding whether to transfer jurisdiction." *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285 (4th Dist.), ¶ 10, *citing* R.C. 2152.12(B); *State v. Watson,* 47 Ohio St.3d 93, 95-96, 547 N.E.2d 1181(1989); *State v. Douglas*, 20 Ohio St.3d 34, 36–37, 485 N.E.2d 711 (1985); and *State v. Hopfer*, 112 Ohio App.3d 521, 535–536, 679 N.E.2d 321 (2nd Dist. 1996).

> In this broad assessment, any one particular circumstance may carry more weight than other circumstances. For example, the seriousness of the alleged act may speak not only to a child's mental health, but also to her threat to the community and to her need for rehabilitation beyond her twenty-first birthday. See [State v. Watson, 47 Ohio St.3d 93, 96, 547 N.E.2d 1181, 1184 (1989)]. In sum, any evidence that reasonably supports the juvenile court's decision to relinquish jurisdiction will suffice to sustain that court's judgment.

*State v. Hopfer,* 112 Ohio App.3d 521 at 536, 679 N.E.2d 321. *Accord, State v. Anderson,* 5th Dist. Delaware No. 14 CAA 05 0034, 2015-Ohio-888, ¶ 48.

**{¶41}** While there is evidence in the record that supports the juvenile court retaining jurisdiction over this case, there was also evidence supporting the transfer. The

court expressly based its decision upon Blair's prior conduct and failure of the juvenile justice system to rehabilitate him. Nothing in the record supports Blair's argument that the juvenile court's decision was based on erroneous facts, that the trial court failed to weigh the appropriate factors or that the trial court's decision was unreasonable, arbitrary, or capricious.

{¶42} We find the trial court properly considered the factors set forth in R.C. 2152.12, along with all other relevant factors and circumstances. While Blair may disagree with the weight given to these factors by the trial judge, the trial court did not abuse its discretion, and therefore, we have no basis for concluding that the decision to transfer Blair to adult court violated Blair's right to due process of law.

{¶43} Accordingly, Blair's sole assignment of error is overruled.

{¶44} The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, J.,

Delaney, P.J., and

Wise, Earle, J., concur