[Cite as *State v. Johnson*, 2015-Ohio-96.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99377

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JIMMIE JOHNSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-10-537345

**BEFORE:** Boyle, P.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Daniel T. Van
Assistant County Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** After pleading guilty to an amended indictment for involuntary manslaughter and two counts of felonious assault, with all counts carrying three-year firearm specifications, defendant-appellant, Jimmie Johnson, appeals his conviction and sentence. Johnson raises several assignments of error, including the propriety of the juvenile court transferring jurisdiction to the adult court. Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶2}** On October 20, 2009, a complaint was filed in the Cuyahoga County Court of Common Pleas, Juvenile Division, alleging the following:

> Jimmie Johnson, a child of about the age of 15, is a delinquent child, as defined in ORC 2152.02(F), because on or about Sept. 22, 2009, in the vicinity of 6207 Broadway Ave., Cleve., Ohio, he purposely caused the death of Jerry Goodwin, in violation of ORC 2903.02, an unclassified felony.

**{¶3}** The complaint further alleged one- and three-year firearm specifications.

**{¶4}** On January 21, 2010, the state moved for the juvenile court to relinquish jurisdiction under R.C. 2152.10(B) and requested a hearing under Juv.R. 30(A), arguing that "there is probable cause" that Johnson committed the act of murder alleged in the complaint and that "there may be reasonable ground to believe that [Johnson] is not amenable to rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children."

*Probable Cause Hearing*

**{¶5}** On March 15, 2010, the juvenile court held a joint probable cause hearing for both Johnson and D.S., who was also charged in connection with the shooting on September 22, 2009. The state offered the testimony of two witnesses: C.M. and Ch.M. — both age 17. According to the witnesses' testimonies, Johnson shot Jerry Goodwin ("Jerry") on the night of September

22, 2009. C.M. testified that, after Johnson and Jerry started arguing, Johnson told his friend, D.S., "Give me my gun," which D.S. did, and then Johnson shot Jerry.

{¶6} Similarly, Ch.M. testified that once D.S. had the gun in his hand, "[t]hen [Johnson] like, No, nigga, give me my gun. So [D.S.] pass it off to [Johnson]." According to Ch.M., three gunshots were initially fired and came from Johnson "because he was the only person who had the gun." On cross-examination, Ch.M. admitted that he was arrested for the murder of Jerry but the charges were later dropped.

{¶7} Following the hearing, the juvenile court determined that there was probable cause to believe that Johnson committed the act charged and referred Johnson to the juvenile court clinic for an evaluation.

*Amenability Hearing*

{¶8} On May 6, 2010, the court held an amenability hearing to determine if Johnson could remain within the juvenile justice system or be bound over to the adult court. At the time of the amenability hearing, Johnson was 16 years of age. The state presented two witnesses: Eleanor Goodwin, the victim's mother, and Mary Rodgers, an investigative probation officer.

{¶9} Goodwin testified as to her son being a good student, "a happy young man," who "didn't bother people." Goodwin further testified that her son wanted to go to college and either be a football player or a lawyer. Goodwin also indicated that her son had one "run-in" with the law where he spent two months in a juvenile detention center after the police found a bag of marijuana on him. According to Goodwin, Jerry changed after spending time in juvenile detention; he went to work at the church. The state also elicited testimony from Goodwin as to the impact of Jerry's death on her and her family. Goodwin expressed difficulty in accepting that Jerry was gone and that the loss was "really hard."

**{¶10}** Rodgers testified that she is employed by the Cuyahoga County Juvenile Court as an investigative probation officer and that she conducted a "social history" of Johnson, prior to his psychological evaluation. According to Rodgers's investigation, Johnson had "several suspensions, not this year, but dating back to 2004." Specifically, Johnson was suspended in 2004 and in 2005, while at Mound Elementary School, for "more than one person acting to harm another" and for "fighting, pushing, or hitting another student." In October 2008, while at South High School, he was suspended for "not adhering to school culture or directives." Finally, on April 6, 2009, and April 28, 2009, also during his ninth grade year at South High, Johnson was suspended each time for the same offense of "more than one person acting to harm another."

**{¶11}** Rodgers further testified that Johnson did not have attendance problems at school until his sophomore year, and that he had been "truant for the majority of the school year." Johnson's absence from school was unexcused from August 27, 2009 until October 21, 2009, and he started at the detention center on October 27, 2009. Rodgers also explained that Johnson denied being involved in any gang but indicated that "a lot of his family and friends are gang involved." She further testified that Johnson admitted to regular drug use; "he stated he's been smoking marijuana since age 15," smoking two marijuana blunts every other day.

**{¶12}** Johnson presented four witnesses on his behalf. First, Johnson offered the testimony of Jayson Heaggans, who coached Johnson for years in the Cleveland Municipal League for football. According to Heaggans, Johnson was "never a problem" and "never gave [Heaggans] any attitude." Heaggans described Johnson as "very respectable" and "a leader." Heaggans further testified that he would mentor Johnson after the football seasons.

**{¶13}** John Story, a "linkage coordinator" at South High School, testified that he first met Johnson the summer before Johnson's ninth grade year when Johnson voluntarily participated at

math camp for a few weeks. Story continued to interact with Johnson during his time at South High. According to Story, he never saw any signs of Johnson being involved in a gang, despite another teacher thinking otherwise. Story also testified that he was not aware of Johnson having any issues at home.

{¶14} Keith Hubbard testified that he considered himself to be a surrogate father to Johnson. At the time of the hearing, Hubbard had lived with LaTanya Hobbs (Johnson's mother) for approximately six years. According to Hubbard, Johnson always respected Hobbs and him and has not had any problems in school. Hubbard, who owns a painting and lead and asbestos removal business, testified that Johnson has worked for him, helping with painting, clean up, and demolition.

{¶15} Johnson's mother, Hobbs, testified that Johnson is her youngest of four children and that he had "perfect attendance" at school. Hobbs stated that Johnson was a merit roll and honor roll student in middle school. Hobbs further testified that Johnson has received several awards in both school and sports. Hobbs described Johnson as "smart, intelligent, spoiled," explaining that she has spoiled him. Hobbs further testified that Johnson has never been in trouble before and was not involved with any gangs. On cross-examination, Hobbs acknowledged that the perfect attendance was "aside from his two suspensions in ninth grade for fighting."

{¶16} The parties also stipulated to Johnson's psychological evaluation and report prepared by Dr. Joseph Konieczny, that the juvenile court accepted into evidence. According to Dr. Konieczny's evaluation, "there is no indication that [Johnson] suffers from any major mental or psychiatric disorder that is affecting his ability to perceive reality." Dr. Konieczny described Johnson as "polite and cooperative" and "very soft-spoken." He further indicated that Johnson's

"ability to concentrate and to attend to task appeared to be quite adequate." Dr. Konieczny further stated that, based on Johnson's test results, Johnson's intellectual capabilities "lie in the average range."

{¶17} In his report, Dr. Konieczny offered no specific recommendation as to Johnson's amenability to the juvenile justice system. He did however identify the following five factors that

> should be regarded as indicators that [Johnson] would be responsive to the care and rehabilitative services available through the juvenile justice system:
>
> 1. Jimmie has had no previous history of delinquency.
>
> 2. Jimmie has never received any services through the juvenile justice system. He has never been placed on probation program services. He has never been committed to the Youth Development Center or to a facility of the Ohio Department of Youth Services.
>
> 3. Jimmie has had no significant history of problematic behaviors in the school setting.
>
> 4. Jimmie has had no previous history of significant predatory, aggressive, or assaultive behaviors.
>
> 5. At the age of 16 years and 11 [sic] months, Jimmie is well below the age of majority.

{¶18} Dr. Konieczny further identified the following two factors as indicators that Johnson

> would not be responsive to the care and rehabilitative services available through the juvenile justice system:
>
> 1. The act which Jimmie has been charged allegedly involved the use of a handgun.
>
> 2. The act which Jimmie has been charged resulted in the death of the alleged victim.

**{¶19}** With respect to whether Johnson is physically, emotionally, and psychologically mature enough for a transfer to adult court, Dr. Konieczny offered no opinion, indicating that the "scope and focus of this evaluation cannot address these issues."

**{¶20}** At the conclusion of the hearing, the court stated the following on the record:

All right. The Court had a chance to — First of all, for the record, the Court had a chance to read the entire psychological evaluation that was completed by Dr. K. The report date for that was April 23rd of this year.

Also, the Court had a chance to review all of the factors under Section 2152.12 of the Ohio Revised Code that the Court must consider in these cases. So there are a number of factors that the Court had to look at that would be in favor of binding him over and there are a number of factors that would be in favor of keeping him in Juvenile Court.

So having weighed all of those factors, the Court at this time — And one more thing for the record. The Court also before we even started this hearing had a chance to review its notes that were taken by this Court at the probable cause hearing, which was held in March.

So taking that all into consideration, the Court at this time feels that Jimmie is not amenable to the juvenile justice system. And would just note at this time that the key factor which the Court gave a lot of weight to was the fact that the Court feels there is not sufficient time to rehabilitate the child within the juvenile system. And the reason the Court put a lot of weight into that is because of the incident itself, the allegation that he actually did shoot and kill the other boy.

So at this time, based on my finding right now that he is not amenable to the juvenile justice system, the Court will transfer Jimmie to the adult system where he will be tried as if he were an adult.

**{¶21}** Following the court's ruling, the state moved to dismiss the pending complaint containing an aggravated riot charge against Johnson.[1]

**{¶22}** The following day, the juvenile court issued a journal entry, setting forth its findings in writing. The juvenile court listed the following four factors under R.C. 2152.12(D)

---

[1]The record reveals that Johnson allegedly was charged with aggravated rioting due to an incident that occurred while at the Juvenile Detention Center.

as applying in this case in favor of transfer:

[1.] The victim suffered physical or psychological harm, or serious economic harm.

[5.] The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

[8.] The child is emotionally, physically, or psychologically mature enough for the transfer.

[9.] There is not sufficient time to rehabilitate the child within the juvenile system.

{¶23} The juvenile court further considered the relevant factors weighing against transfer under R.C. 2152.12(E), finding that the following factor applied:

[5.] The child previously has not been adjudicated a delinquent child.

*Transfer of Jurisdiction*

{¶24} In May 2010, Johnson was bound over to the general division of the Cuyahoga County Court of Common Pleas after the juvenile court determined that he was "not amenable to care or rehabilitation within the juvenile court system." The grand jury subsequently indicted him with one count of murder, two counts of felonious assault, and two counts of attempted felonious assault, with all the charges carrying one- and three-year firearm specifications.

*Guilty Plea and Sentence*

{¶25} In February 2011, Johnson pleaded guilty to an amended indictment of involuntary manslaughter and two counts of felonious assault, with all counts carrying a three-year firearm specification.

{¶26} In March 2011, the trial court imposed ten years on the involuntary manslaughter count to run consecutive to the three-year firearm specification and to the concurrent five-year

terms on the felonious assault convictions, for a total sentence of 18 years.

**{¶27}** Over a year later, Johnson filed a petition for postconviction relief, which the trial court denied.

**{¶28}** Upon leave from this court, Johnson filed a delayed appeal from his conviction and this court appointed counsel. Johnson's first appointed counsel filed an *Anders* brief with this court, which was treated as a motion to withdraw and granted. Johnson pro se filed an appellate brief, raising the following three assignments of error:

> I. The juvenile court violated the defendant's due process rights when it transferred the case to the adult court without an amenability hearing or valid waiver on the record.
>
> II. The trial court violated defendant's speedy trial rights when it failed to give a legitimate reason as to why the continuance was granted and not stated in open court on the record.
>
> III. The ineffective assistance of counsel the defendant received fell well below the reasonable standard when trial counsel failed to protect the defendant's due process rights, or at a minimum, to object to the transfer.

**{¶29}** After ordering that the juvenile record be prepared and filed, this court further appointed new counsel to represent Johnson on appeal. Johnson's counsel has also filed an appellate brief, raising the following six assignments of error:

> I. The juvenile court committed prejudicial error by allowing the decedent's mother to testify and provide victim impact testimony at the amenability hearing in juvenile court.
>
> II. The juvenile court abused its discretion and denied appellant due process of law by finding that appellant was not amenable to rehabilitation in the juvenile justice system.
>
> III. Appellant received ineffective assistance of counsel in juvenile court in violation of his rights under the Sixth Amendment to the Constitution of the United States and Article I, Section 10, of the Constitution of the state of Ohio.
>
> IV. The trial court committed prejudicial error and denied appellant due process of law by accepting his guilty plea without first fully advising him of his

constitutional rights and determining he understood that, by entering his guilty plea, he was waiving an important constitutional right, to wit: the presumption of innocence.

V. The trial court committed prejudicial error by failing to make the findings necessary to support the imposition of consecutive sentences.

VI. Ohio's refusal to provide the full protection of its speedy trial statute to juveniles who are transferred to adult court for criminal prosecution, while providing such protection to adults and while providing limited protection to juveniles who are charged as serious youthful offenders constitute a denial of due process and equal protection of the laws.

{¶30} For the ease of discussion, we will address Johnson's pro se assignments of error last and his other assignments of error out of order.

Discretionary Transfer of Jurisdiction

{¶31} In his second assignment of error, Johnson argues that the trial court abused its discretion and denied him due process by finding that he was not amenable to rehabilitation in the juvenile justice system and by transferring his case to the adult court. We disagree.

{¶32} Under Ohio's juvenile justice system, there are two types of transfer: mandatory and discretionary. *State v. Mays*, 8th Dist. Cuyahoga No. 100265, 2014-Ohio-3815, ¶ 17, citing *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10.

> Mandatory transfer removes discretion from judges in the transfer decision in certain situations. * * * Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.

*Id.*, quoting *State v. Hanning*, 89 Ohio St.3d 86, 90, 728 N.E.2d 1059 (2000); R.C. 2152.12(A) and (B).

{¶33} In this case, Johnson was bound over to the adult court pursuant to a discretionary transfer, which is governed by Juv.R. 30 and R.C. 2152.12.

Under R.C. 2152.12(B), after a complaint has been filed charging a child with offenses that would be a felony if committed by an adult, a juvenile court may transfer jurisdiction to the general division of the common pleas court if it finds that (1) the child was 14 years of age or older at the time of the act; (2) there is probable cause that the child committed the act; and (3) the child is not amenable to rehabilitation within the juvenile justice system and, to ensure the safety of the community, the child should be subject to adult sanctions.

*State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 7.

**{¶34}** Johnson does not challenge the first two requirements for discretionary transfer of jurisdiction; his assignment of error focuses solely upon the trial court's finding that he is not amenable to rehabilitation within the juvenile justice system.

**{¶35}** In making the amenability determination, the juvenile court must consider whether the applicable factors under R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors under R.C. 2152.12(E) indicating that the case should not be transferred. R.C. 2152.12(B)(3); *Jones* at ¶ 8. Additionally, aside from the specifically enumerated factors, the juvenile court is instructed to consider "any other relevant factors." *Id.*, citing R.C. 2152.12(D) and (E). "The record shall indicate the specific factors that were applicable and that the court weighed." R.C. 2152.12(B)(3). Further, when the trial court determines a transfer is proper, the juvenile court "shall state the reasons for the transfer on the record." R.C. 2152.12(I); *see also* Juv.R. 30(G).

**{¶36}** We review a juvenile court's amenability determination under R.C. 2152.12 pursuant to an abuse of discretion. *Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, at ¶ 9, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39. Indeed, a "juvenile court enjoys wide latitude to retain or relinquish jurisdiction." *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989). And given the discretion afforded the juvenile court by the legislature in determining a juvenile's amenability to the juvenile justice system,

"[i]f there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence." *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.). We therefore will not reverse a juvenile court's decision to transfer unless the decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

*Application of Statutory Factors*

{¶37} When determining whether to transfer a child to the trial court for adult prosecution, R.C. 2152.12(D) requires that a juvenile court consider the following relevant factors in favor of transfer:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the

transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶38} Additionally, R.C. 2152.12(E) requires that the juvenile court consider the following relevant factors against a transfer:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶39} Johnson argues that the trial court abused its discretion by ignoring evidence supporting the retention of jurisdiction and arbitrarily finding the existence of factors in favor of relinquishing jurisdiction that were not supported by the record. According to Johnson, only two factors under R.C. 2152.12(D) apply to support the relinquishment of jurisdiction, namely, that (1) the victim suffered physical harm (R.C. 2152.12(D)(1)), and (2) the child used a firearm (R.C. 2152.12(D)(5)). Conversely, Johnson claims that, while the juvenile court only recognized one factor in favor of retention (R.C. 2152.12(E)(5)), four other factors under R.C. 2152.12(E) actually exist, namely, R.C. 2152.12(E)(1), (2), (6), and (8).

{¶40} In support of this argument, Johnson relies on the report of Dr. Konieczny and his own characterization of the evidence presented. But contrary to Johnson's assertion, we do not agree that the evidence at the probable cause hearing supports his claim that either (1) "the victim induced or facilitated the act charged" or (2) "the child acted under provocation in allegedly committing the act charged." *See* R.C. 2152.12(E)(1) and (2). While both witnesses testified that Jerry knew Johnson was "blowing down on him" (i.e., talking behind his back) and that Jerry wanted to talk to Johnson about it, there was no testimony that Jerry had a gun or threatened Johnson's life. The witnesses testified that Jerry brought up the subject after Johnson had crossed the street and approached them and that Johnson — not Jerry — escalated any argument by asking D.S. for his gun and then firing the gun.

{¶41} As for the other two factors, R.C. 2152.12(E)(6) and (8), we likewise cannot say that the trial court abused its discretion in considering them and finding that they weighed in favor of transferring jurisdiction.

{¶42} According to Johnson, Dr. Konieczny's report compels the conclusion that he "is not emotionally, physically, or psychologically mature enough for the transfer" (R.C. 2152.12(E)(6)), and "there is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety" (R.C. 2152.12(E)(8)). Dr. Konieczny, however, did not offer any opinion as to Johnson's maturity to be transferred to the adult court. And while Dr. Konieczny arguably found more factors present supporting a finding that sufficient time exists to rehabilitate Johnson in the juvenile system, the trial court is still the ultimate trier of fact and free to disagree with the psychologist's recommendation. *See, e.g., State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 25 ("As the trier of fact, it was within the court's discretion to reject the

psychologist's recommendation."); *State v. Davis*, 189 Ohio App.3d 374, 2010-Ohio-3782, 938 N.E.2d 1043, ¶ 21 (4th Dist.) ("the juvenile court was free to assign any weight to the psychologist's opinion that the court deemed appropriate").

{¶43} Here, the trial court clearly found the severity of the crime and the callousness of Johnson's actions in shooting Jerry as strong indicators that "there is not sufficient time to rehabilitate the child within the juvenile system." Ohio courts have repeatedly recognized that "[t]he more serious the offense, the less amenable the juvenile will be to rehabilitation in the juvenile system." *West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, at ¶ 24, citing *Watson*, 47 Ohio St.3d at 95, 547 N.E.2d 1181; *State v. Lopez*, 112 Ohio App.3d 659, 662, 679 N.E.2d 1155 (9th Dist.). Indeed, "the Ohio Supreme Court has determined that a juvenile who has committed a major felony such as murder may require more time for rehabilitation than a juvenile whose offense is less serious." *West* at ¶ 25, citing *Watson* at 96 (determining there may not be sufficient time to rehabilitate a 15-year-old juvenile before his 21st birthday where the juvenile has been charged with beating a person to death, even though the juvenile is otherwise amenable to rehabilitation).

{¶44} The trial court applied the factors under both R.C. 2152.12(D) and (E) and ultimately determined that the factors in favor of transfer outweighed the factors in favor of the juvenile court retaining jurisdiction. We cannot say that the trial court's decision constitutes an abuse of discretion.

{¶45} The second assignment of error is overruled.

Victim Impact Testimony

{¶46} In his first assignment of error, Johnson argues that the juvenile court committed prejudicial error by allowing the decedent's mother to testify at the amenability hearing. He

contends that the testimony constituted "victim-impact" testimony, offered "for the sole purpose of arousing the sympathy and inflaming the passion of the court" and that the evidence was irrelevant to the amenability determination under R.C. 2152.12. Based on the admission of this evidence, Johnson apparently believes that the juvenile court's transfer of jurisdiction should not stand. We find Johnson's argument unpersuasive for several reasons.

{¶47} First, Johnson offers no authority in support of his claim that the state's introduction of victim impact evidence at an amenability hearing constitutes "prejudicial error," warranting reversal. Secondly, Johnson never objected to the testimony being offered and therefore waived all but plain error. *See* Crim.R. 52(B). Assuming that the introduction of the victim-impact testimony was erroneous, we cannot say that the error affected Johnson's substantial rights when the testimony was presented solely to the bench. Indeed, there is absolutely no evidence that the juvenile court relied on the victim-impact testimony in deciding to relinquish jurisdiction to the adult court. Moreover, the trial court is presumed to consider "'only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968).

{¶48} Notably, the Ohio Supreme Court has repeatedly recognized that the improper introduction of victim-impact evidence during a capital case tried to the bench is not grounds for reversal unless it affirmatively appears that the trial court relied on such testimony in reaching its verdict. *See, e.g., White* at paragraph two of the syllabus ("The use by the state of evidence of the victim's background, and reliance upon such evidence in its argument for the death penalty, is improper and constitutes error, but while such error may be cause for reversal because of its prejudicial effect on a jury, it must affirmatively appear that in a bench trial the court relied on

such testimony in arriving at its verdict in order for such error to be ground for reversal."); *State v. Treesh*, 90 Ohio St.3d 460, 488, 739 N.E.2d 749 (2001) (trial court can be presumed not to give weight to sentence recommendation of victim's family); *State v. Dennis*, 79 Ohio St.3d 421, 433, 683 N.E.2d 1096 (1997) (trial judge can be presumed to disregard victim-impact evidence on decision as to death penalty).

{¶49} Thus, even assuming that the victim-impact evidence should not have been offered at the amenability hearing, there is no indication that the trial court relied on such testimony in deciding to transfer Johnson to adult court. Accordingly, based on the record before us, we find no grounds for reversal and overrule the first assignment of error.

Ineffective Assistance of Counsel

{¶50} In his third assignment of error, Johnson argues that he was denied effective assistance of counsel in violation of his constitutional rights during the juvenile court proceedings.

{¶51} An accused juvenile has a constitutional right to counsel and the same rights to effective assistance of counsel as an adult criminal defendant. *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Moreover, the defendant must show that there exists a

reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

**{¶52}** Johnson argues that his trial counsel was deficient because he failed to subpoena an eyewitness who would have "directly contradicted the state's evidence adduced at the probable cause hearing." In support of this argument, Johnson relies on an exhibit attached to his pro se brief, which appears to be a page of discovery provided from the state to the defense, listing a witness named David Munden, who identified C.M. as the shooter of Jerry.

**{¶53}** Johnson's argument however requires us to speculate that Munden would have testified to this at the probable cause hearing and that defense counsel failed to investigate into this matter. Indeed, the record contains no evidence of defense counsel's investigation or an affidavit from Munden. To establish an ineffective assistance of counsel claim would require proof outside of the record, such as an affidavit demonstrating the probable testimony. For this reason, "[s]uch a claim is not appropriately considered on a direct appeal." *State v. Madrigal*, 87 Ohio St.3d 378, 391, 721 N.E.2d 52 (2000), citing *State v. Keith*, 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997). Because this argument depends on evidence outside of the record on direct appeal, the issue is better addressed in a timely petition for postconviction relief. *Id.*

**{¶54}** Johnson also argues that his defense counsel was ineffective in failing to tell him about the eyewitness prior to his changing his plea. But again, Johnson's argument calls for evidence outside the record that is not properly before this court on direct appeal.

**{¶55}** Johnson further claims that his defense counsel was deficient by failing to object to the victim impact testimony offered at the amenability hearing. Johnson, however, fails to establish the second prong of the *Strickland* test. Even if we agreed that his defense counsel should have objected, we find no reasonable probability that the outcome would have been

different. There is simply no evidence that the trial court relied on the victim impact testimony in deciding to transfer Johnson to adult court.

{¶56} As his final grounds in support of his claim of ineffective assistance of counsel, Johnson argues that his trial counsel was ineffective in failing to file a motion to dismiss on speedy trial grounds. Johnson, however, fails to demonstrate how his speedy trial rights were violated. He appears to rely on the fact that this court found that the speedy trial rights of his codefendant, D.S., were violated in *In re D.S.*, 8th Dist. Cuyahoga No. 97757, 2012-Ohio-2213, and therefore this court should apply the same holding here. But *In re D.S.* involves a completely separate procedurally history unique to D.S., including that D.S. never entered a guilty plea nor executed a waiver of speedy trial time. Moreover, Johnson pleaded guilty and therefore has waived any claim of ineffective assistance of counsel based upon the trial counsel's failure to file a motion to dismiss on speedy trial grounds. *State v. Miller*, 8th Dist. Cuyahoga No. 94790, 2011-Ohio-928, ¶ 16 ("A guilty plea also waives claims of ineffective assistance of counsel based upon statutory speedy trial issues.").

{¶57} The third assignment of error is overruled.

<u>Guilty Plea</u>

{¶58} In his fourth assignment of error, Johnson argues that his guilty plea cannot stand because the trial court failed to inform him of the presumption of innocence.

{¶59} To ensure that a plea to a felony charge is knowingly, intelligently, and voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of guilty or no contest and that the court may

proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a) – (c). Crim.R. 11(C)(2)(c) sets forth a defendant's constitutional rights as follows:

> Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶60}** A trial court must strictly comply with the mandates of Crim.R. 11(C)(2) regarding the waiver of constitutional rights, i.e., the court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 27.

**{¶61}** This court has addressed the exact argument raised by Johnson and rejected it, recognizing that "Crim.R. 11 does not require the trial court to advise an offender she is presumed innocent, but that the offender, by her plea is waiving the right to 'require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.'" *State v. McDonald*, 8th Dist. Cuyahoga No. 95651, 2011-Ohio-1964, ¶ 7, quoting *State v. King*, 8th Dist. Cuyahoga No. 76696, 2000 Ohio App. LEXIS 4175 (Sept. 14, 2000).

**{¶62}** Reviewing the entire plea colloquy, we find that prior to accepting Johnson's plea, the trial court strictly complied with the requirements of Crim.R. 11(C)(2), including informing Johnson that, by pleading guilty, he was giving up his "right to trial * * * at which time the state must prove [him] guilty" and that he had a right to remain silent and to not testify at trial. Given that the trial court strictly complied with Crim.R. 11(C)(2), we find no merit to Johnson's fourth assignment of error and overrule it.

{¶63} In his fifth assignment of error, Johnson argues that the trial court erred in imposing consecutive sentences without making the required findings as required under R.C. 2929.14(C). Johnson's argument, however, relies on the current version of the statute as amended by H.B. 86, effective September 30, 2011. Johnson was sentenced on March 7, 2011, prior to the effective date of H.B. 86. The trial court therefore was not required to make the findings contained in R.C. 2929.14(C) before imposing consecutive sentences. *See State v. Calliens*, 8th Dist. Cuyahoga No. 97034, 2012-Ohio-703, ¶ 28 (recognizing that the amendments are not applicable to individuals who were sentenced prior to the September 30, 2011 effective date). Indeed, at the time that Johnson was sentenced, trial judges were not mandated to make statutory findings as a prerequisite to imposing consecutive sentences. *See State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 99; *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraph three of the syllabus.

{¶64} The fifth assignment of error is overruled.

## Due Process and Equal Protection

{¶65} Johnson argues in his sixth assignment of error that Ohio courts should extend the full protection afforded under R.C. 2945.71 (speedy trial time) to juveniles. He essentially contends that his speedy trial rights were violated based on the amount of days that he was held in juvenile court prior to the court ordering his transfer to adult court.

{¶66} Statutory speedy trial time periods do not apply to cases initiated in juvenile court. *State ex rel. Williams v. Court of Common Pleas*, 42 Ohio St.2d 433, 434-435, 329 N.E.2d 680 (1975). The Ohio Supreme Court explained as follows:

> The time limits set forth in R.C. 2945.71(C) apply only to a "(a) person against whom a charge of felony is pending * * *." A juvenile who has lodged against

him an affidavit alleging that he is delinquent because he committed an act which, if committed by an adult, would constitute a felony is not a person against whom a charge of felony is pending. The juvenile becomes such a person and is, therefore, included with the scope of R.C. 2945.71(C) only if and when the Juvenile Court relinquishes jurisdiction over the case and transfers it to the appropriate "adult" court.

(Citations omitted.) *Id.*

**{¶67}** Without citing any authority, Johnson contends that excluding juveniles from the protection of this law violates his constitutional rights. We disagree. Indeed, "[g]iven that the Supreme Court of Ohio has concluded that Ohio's speedy trial statute is inapplicable to juvenile offenders similarly situated to appellant, we cannot conclude that such a holding violates appellant's right to equal protection under the law." *In re Milgrim*, 8th Dist. Cuyahoga No. 77510, 2001 Ohio App. LEXIS 482 (Feb. 8, 2001).

**{¶68}** The sixth assignment of error is overruled.

### Amenability Hearing and Objection to Transfer

**{¶69}** In his first pro se assignment of error, Johnson argues that the juvenile court improperly transferred his case to the general division without first having an amenability hearing as required under Juv.R. 30 and R.C. 2152.12. He further argues in his third pro se assignment of error that his trial counsel was ineffective by failing to object to the transfer. These arguments, however, are directly contradicted by the record. As detailed above, Johnson had an amenability hearing, at which his trial counsel advocated for the juvenile court to retain jurisdiction over him. We find no merit to Johnson's first and third assignments of error and accordingly overrule them.

### Speedy Trial Rights

**{¶70}** In his second pro se assignment of error, Johnson argues that the trial court should have dismissed the indictment against him because the state violated his statutory speedy trial rights. We disagree.

**{¶71}** Aside from the fact that Johnson executed a waiver of his speedy trial rights for a period of time and has failed to demonstrate how his speedy trial rights were violated, his guilty plea bars any challenge to his statutory speedy trial rights on appeal. *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-2897, citing *State v. Kelly*, 57 Ohio St.3d 127, 556 N.E.2d 658 (1991), and *Montpelier v. Greeno*, 25 Ohio St.3d 170, 495 N.E.2d 581 (1986) (recognizing that "a guilty plea foreclosed the right to assert on appeal the issue of the denial of a speedy trial").

**{¶72}** The second pro se assignment of error is overruled.

**{¶73}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART,    J., CONCUR