[Cite as *State v. Cleveland*, 2018-Ohio-1185.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105443**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAYQUILLE CLEVELAND

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605737-B

**BEFORE:**   Laster Mays, J., E.A. Gallagher, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   March 29, 2018

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

By: Victoria Bader
Assistant Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:　Brian D. Kraft
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Jayquille Cleveland ("Cleveland") appeals the decision of the Juvenile Division of the Cuyahoga County Court of Common Pleas finding that probable cause existed to believe that Cleveland committed the charged offenses, and subsequently determining that Cleveland was not amenable to rehabilitation in the juvenile system. Cleveland was transferred to the General Division of the Cuyahoga County Court of Common Pleas ("General Division") to be tried as an adult. We affirm the Juvenile Court's determination.

## I. Background and Facts

{¶2} On September 15, 2015, a complaint was filed against Cleveland, who was fifteen years of age at the time of the alleged crime, and codefendant J.B., who was seventeen years of age at the time, in the Cuyahoga County Juvenile Court. The charges stemmed from a shooting and robbery that occurred on August 23, 2015.

{¶3} Cleveland was charged with:

Aggravated murder, R.C. 2903.01(B), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A));

Murder, R.C. 2903.02(B), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A));

Aggravated robbery, R.C. 2911.01(A)(1), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A));

Aggravated robbery, R.C. 2911.01(A)(1), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A));

Robbery, R.C. 2911.02(A)(1), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A)); and

Robbery, R.C. 2911.02(A)(1), with one- and three-year firearm specifications (R.C. 2941.141(A), and 2941.145(A)).

{¶4} On September 23, 2015, the state moved the court for a probable cause hearing pursuant to R.C. 2152.10(B) to relinquish jurisdiction to the General Division on the grounds that Cleveland was a delinquent child who committed an act that would be a felony if committed by an adult, and he was 14 years of age or older at the time of the alleged crime.

## A. Probable Cause Hearing

{¶5} On March 2, 2016, Cleveland and his codefendant J.B. appeared for a probable cause hearing. The state asserted that Cleveland and J.B. approached a parked vehicle occupied by Annjeanette Bailey ("Bailey") and Frederick McIntosh ("McIntosh") at approximately 6:15 p.m., armed with handguns. Cleveland approached the driver's side of the vehicle where Bailey was seated, and J.B. approached McIntosh on the passenger's side. Both were pointing guns and requested that Bailey and McIntosh "gimme your stuff." Affidavit Supporting Arrest Warrant No. 0908289308 (Sept. 8, 2015), p. 2. The occupants refused. McIntosh allegedly was struggling with J.B. when Cleveland reached into the driver's window and shot McIntosh in the back. The assailants ran from the scene.

{¶6} The area where the incident occurred is monitored by security cameras and recorded portions of the activities. Bailey testified based on her recollection and also to

the events depicted in the video. Approximately six to eight young men were walking down the street in the direction of her vehicle where she was sitting in the driver's seat next to McIntosh and checking her cell phone. Two young men returned, approached each side of the car and asked that she and McIntosh turn over whatever they had. The shooter was standing on her side of the vehicle and was doing all of the talking, directing the assailant who was standing on the passenger's side.

{¶7} Bailey stated that "everything just went black." (Tr. 28.) She then heard a loud "pop." Her left eardrum was ringing. She only recalled portions of what happened next. A bullet (casing) was laying on her chest and McIntosh was "laying over there." (Tr. 28.)

{¶8} Bailey's daughter Mariesha ("Mariesha") also testified, and described the video events. Mariesha had just left the house and was opening her car door when she heard a shot. She looked up and "one of those two [defendants] came straight past me, and I saw him tuck a gun into his pants." (Tr. 57.) She walked toward the corner and saw her mother standing in the street saying that someone had just shot McIntosh. Mariesha followed the boys in her car and observed them running across the field near the Cuyahoga Community College campus. She attempted to follow but was unable to catch them. Mariesha identified J.B.'s residence that is located in the area where the incident occurred.

{¶9} Cleveland was ultimately identified after family members and friends sent social media photographs to Bailey and Mariesha of individuals that were possibly involved. They forwarded the identifying social media photographs to the police.

{¶10} During the hearing, Bailey identified a photograph of Cleveland who she said looked like the assailant, but then looked at the same photograph and denied that it was the assailant. Bailey could not describe the individual who approached her car and shot McIntosh except that his "face was scrunched up real tight." (Tr. 26.) Bailey and Mariesha also failed to select Cleveland in photographic or personal lineups at the police station. Both were able to identify Cleveland at the hearing.

{¶11} When asked while reviewing the surveillance video whether Cleveland was the same individual that she saw running from the crime scene, Mariesha responded, "[m]ost of me says yes, but right before he actually hits the camera here, it's like they put the hood[s] over their face, and I kind of saw here, but I didn't see here [indicating on the video]. So I can't really say exactly who it is running here [indicating]." (Tr. 66-67.) Mariesha finally responded that she "believe[d] it was" the appellant, "[t]he facial features that I saw, yes, it was" the appellant. (Tr. 68.) She then recounted seeing Cleveland and J.B. in the area several times, and stated that she was also familiar with several of the young men depicted in the video.

{¶12} Detective Sandoval ("Det. Sandoval") of the Cleveland Police Homicide Unit testified that he responded to the scene and interviewed Bailey, Mereisha and Bailey's other daughter. Det. Sandoval stated that, on August 24, 2015, J.B. appeared at

the Third District police station with his mother to explain his involvement with the incident. They were transported to the homicide offices to meet with Det. Sandoval.

{¶13} J.B. provided a videotaped statement admitting that he had a BB gun and that he accompanied Cleveland at Cleveland's request. They wore hooded jackets and Cleveland was carrying a gun. The BB gun was recovered from the location where J.B. stated he dropped it. Det. Sandoval also confirmed that Bailey and Mariesha were unable to select Cleveland and J.B. from a photographic lineup, though they had just emailed a photograph of Cleveland to the homicide unit the previous day.

{¶14} Spent shell casings from a .380 caliber revolver were discovered on the driver's side of the vehicle. No fingerprints or DNA tying Cleveland to the scene was discovered. The surveillance video depicted the two assailants walk past the car, walk away, and then approach the automobile. The faces of the assailants were not discernible in the video. Except for the in-court identification of Cleveland by the witnesses, the sole evidence tying Cleveland to the scene was the confession of J.B.

{¶15} The trial court determined that Cleveland was 15 years of age at the time of the charged conduct and that there was probable cause to believe that Cleveland committed the alleged acts that would be crimes if committed by an adult as specified in the indictment. The court ordered an investigation to determine Cleveland's amenability to juvenile rehabilitation.

**B.    Amenability Hearing**

**{¶16}** An amenability hearing was held on April 20, 2016, where the trial court determined:

> [A]fter a full investigation, including a mental examination of said child * * * and after full consideration of the child's prior juvenile record, family environment school record, efforts previously made to treat and rehabilitate, the child, including prior commitments to the Department of Youth Services, the nature and severity of the offense herein, the age, physical, and mental condition of the victim as effected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the child herein is not amenable to care or rehabilitation within the juvenile system.
>
> The court further finds that the safety of the community may require that the child be subject to adult sanctions.

Journal entry No. 0908921774 (Apr. 21, 2016), at p. 1.

**{¶17}** The court made further findings on factors supporting transfer under R.C. 2152.12(D)(1), (5), (6) and (8) respectively, enumerated hereafter accordingly: (1) the victim suffered physical harm; (5) the child used a firearm during the act; (6) the child was on parole for a prior delinquency conviction or adjudication or awaiting a community control sanction;[1] and (8) the child is mature enough physically, emotionally "or" psychologically for the transfer, and there is not sufficient time to rehabilitate the child in the juvenile system. Journal entry No. 0908921774 (Apr. 21, 2016), at p. 2.

---

[1] Cleveland was not on parole but had been arraigned 20 days before the shooting in this case for a misdemeanor domestic violence allegation.

**{¶18}** Further considering the R.C. 2152.12(E) factors against transfer, the trial court identified as relevant items (4) and (7). First, the child has not previously been adjudicated delinquent. Second, the juvenile system provides sufficient security to protect the public. *Id.*

**{¶19}** The trial court expressed particular concern about "the nature and callousness of the act" and Cleveland's "principal participation in the activity that lead to the victim's death." This opinion, the court explained, was "based upon the video" that the court reviewed where Cleveland and the codefendant "cased" and "targeted the victims" and then "mercilessly used their weapons on the deceased." Journal entry No. 0908921774 (Apr. 21, 2016), at p. 2. Cleveland's case was transferred for adult adjudication.

**{¶20}** On November 23, 2016, Cleveland entered a guilty plea to: (1) one count of involuntary manslaughter (R.C. 2903.04), a first-degree felony; (2) two counts of aggravated robbery (R.C. 2911.01(A)(1)), felonies of the first degree; (3) one count of discharging a firearm in or near prohibited premises (R.C. 2923.162(A)(3)), a first-degree felony; (4) and one count of tampering with evidence (R.C. 2921.12(A)(1)), a third-degree felony. The manslaughter and robbery counts carried one- and three-year firearm specifications that merged for purposes of sentencing.

**{¶21}** Cleveland was sentenced to:

11 years on the manslaughter charge, with a three-year firearm specification to be served prior to and consecutive to the underlying term for a total of 14 years;

10 years for each aggravated robbery charge, with three-year firearm specifications to be served prior to and consecutive to the underlying term for a total of 13 years for each robbery count; and
10 years for discharging a firearm.

The manslaughter sentence was run consecutive to the other counts, each of which were to be served concurrently, for a total of 24 years. Postrelease control for a five-year term was also imposed.

**{¶22}** Cleveland appeals the decision of the Juvenile Court to transfer for an adult adjudication. We affirm.

## II.  Assignments of Error

**{¶23}** Cleveland poses two assigned errors for our consideration:

I.      The Juvenile Court's probable cause determination was not supported by sufficient evidence, Fifth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution.

II.     The Juvenile Court abused its discretion when it determined that 15-year-old appellant was not amenable to treatment in the juvenile system, in violation of R.C. 2152.12(B), Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10, Ohio Constitution.

## III.  Discussion

**{¶24}** Cleveland was 15 years of age at the time the crimes were committed. R.C. 2152.12(A)(1)(a)(ii) provides:

(a)     After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer the case if either of the following applies:     *     *     *

(ii) The child was fourteen or fifteen years of age at the time of the act charged, section 2152.10 of the Revised Code provides that the child is eligible for mandatory transfer, and there is probable cause to believe that the child committed the act charged.

*Id.*

**{¶25}** R.C. 2152.10(B) governs in this case:

(B) Unless the child is subject to mandatory transfer, if a child is fourteen years of age or older at the time of the act charged and if the child is charged with an act that would be a felony if committed by an adult, the child is eligible for *discretionary transfer* to the appropriate court for criminal prosecution. In determining whether to transfer the child for criminal prosecution, the juvenile court shall follow the procedures in section 2152.12 of the Revised Code. If the court does not transfer the child and if the court adjudicates the child to be a delinquent child for the act charged, the court shall issue an order of disposition in accordance with section 2152.11 of the Revised Code.

(Emphasis added.) *Id.*

## A. Probable Cause

**{¶26}** In considering the propriety of the discretionary bindover of a 15 year-old under R.C. 2152.12(B), the Juvenile Court determines whether the state's evidence credibly supports each element of the offense to find that probable cause exists that the juvenile committed the offense. *In re C.G.*, 8th Dist. Cuyahoga No. 97950, 2012-Ohio-5286, ¶ 31, citing *State v. Iacona*, 93 Ohio St.3d 83, 93, 2001-Ohio-1292, 752 N.E.2d 937:

Probable cause in this context is not guilt beyond a reasonable doubt; it is evidence that raises more than a suspicion of guilt. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶16. This standard requires the juvenile court to "evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause."

*In re C.G.* at ¶ 31, quoting *Iacona* at 93.

**{¶27}** We apply a dual standard to our review of the Juvenile Court's determination. On the one hand, we "defer to the court's credibility determinations by reviewing for an abuse of discretion." *Id.* On the other hand, we "conduct a de novo review" of the trial court's legal conclusion that sufficient probable cause existed to "believe that the juvenile committed the charged act." *Id.,* citing *In re A.J.S.* at ¶ 1.

**{¶28}** Cleveland argues that the state failed to provide sufficient evidence that Cleveland is the individual who committed the offense based on the identification evidence presented. J.B. voluntarily approached police and described the events. The video confirms J.B.'s statement that he and Cleveland committed the acts.

**{¶29}** The record reflects that the trial judge gave due consideration to the identification issue:

> [As to appellant], based on the statements provided by both Ms. Bailey, the [c]ourt finds at this point there is credible evidence from those two, not necessarily reliance simply on the court identification of [appellant]. Both of them identified him in court, both of them provided information to the police in terms of identifying him prior to this photo array. And notwithstanding a photo array that's only one instance where they were not able to identify [appellant].
>
> I'm not going to make any statement regarding the suggestiveness of Facebook or social media identifications. What I will say is that there are millions of people on social media.
>
> They, however, only identified the one person, and that was [appellant]. They didn't send — at least there wasn't any testimony that they sent, multiple pictures to Detective Sandoval or his partner. They sent one. So they've met the standard of beyond a mere suspicion.

(Tr. 119-120.)

**{¶30}** The probable cause standard is not as stringent as that of beyond a reasonable doubt and considers whether the state has demonstrated more than a mere suspicion of guilt when weighed upon any evidence presented by the defense. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 16. After a de novo review of the record, we do not find that the trial court abused its discretion by determining that probable cause existed to determine that Cleveland was a participant in the crimes charged.

**{¶31}** The first assigned error lacks merit.

**B.     Amenability Proceedings**

**{¶32}** We review a challenge to the Juvenile Court's determination on amenability for an abuse of discretion. *State v. Johnson,* 2015-Ohio-96, 27 N.E.3d 9, ¶ 36 (8th Dist.), citing *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 9, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39.

> [A] "juvenile court enjoys wide latitude to retain or relinquish jurisdiction."
> *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989).  And given the discretion afforded the juvenile court by the legislature in determining a juvenile's amenability to the juvenile justice system, "[i]f there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence."   *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.). We therefore will not reverse a juvenile court's decision to transfer unless the decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

*Johnson* at ¶ 36.

**{¶33}** R.C. 2152.12(B) and Juv.R. 30 provide as to discretionary transfers:

"Under R.C. 2152.12(B), after a complaint has been filed charging a child with offenses that would be a felony if committed by an adult, a juvenile court may transfer jurisdiction to the general division of the common pleas court if it finds that (1) the child was 14 years of age or older at the time of the act; (2) there is probable cause that the child committed the act; and (3) the child is not amenable to rehabilitation within the juvenile justice system and, to ensure the safety of the community, the child should be subject to adult sanctions."

*Johnson* at ¶ 33, quoting *Jones* at ¶ 7.

**{¶34}** Juv.R. 30(C) provides:

Discretionary transfer. In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute.

**{¶35}** An amenability hearing was entertained due to Cleveland's age per R.C. 2152.12(B) to determine whether Cleveland was amenable to rehabilitation in the juvenile system. Pursuant to R.C. 2152.12(C), the Juvenile Court ordered an investigation of Cleveland's history, education, mental state, family situation, "and any other factor bearing on whether the child is amenable to juvenile rehabilitation." *Id.*

**{¶36}** R.C. 2152.12(D) lists factors to be considered that support bindover of the case:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication [* * *18] or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶37}** R.C. 2152.12(E) lists factors to be considered that support retention of jurisdiction by the Juvenile Court.

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶38} Both statutes allow the Juvenile Court to consider "any other factors deemed relevant" to determine amenability. *Johnson,* 2015-Ohio-96, 27 N.E.3d 9, ¶ 35, citing *Jones,* 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 8.

{¶39} The Ohio Youth Assessment System Report and Psychological Evaluation Report ("PER") were administered to Cleveland. He was rated "low" on the issue of recidivism due to no prior juvenile adjudications, lack of expression of criminal attitudes, an expressed desire to change his life, and the presence of a supportive family. Cleveland also cites the PER's determination that "'there is no indication of any history or patterns of highly antisocial or predatory conduct' and testing 'did not raise any significant red flags or alarms about psychological or personality problems that would immediately suggest that he is acknowledging highly antisocial values or orientations.'" Appellant's brief (June 26, 2017), at p. 15, citing PER.

{¶40} The Juvenile Court found that factors 1, 5, 6, and 8 supported binding Cleveland over. The Juvenile Court determined that while Cleveland possessed an IQ of

80, he has a high-school-level intellectual ability and there was no indication that he suffered from mental retardation or illness. (Tr. 19.) The Juvenile Court also stated that Cleveland is the size of an average 16-year-old and that there are 18-year-olds of smaller stature, a factor that is weighed in favor of transfer. Cleveland was held to be "emotionally, physically or psychologically mature enough for transfer." (Tr. 19.)

{¶41} An additional relevant factor supporting bindover was the nature of the act:

> The other relevant factor [supporting bindover] here is just the nature of this matter. The callousness of the act. And while the Court can't necessarily use the information that was provided as a way of showing this was part [of] an organized criminal activity[, t]he Court can use the fact that based on the video that was shown, that both [defendants] cased these victims, walked by them, came back again, marked the individuals, used weapons as a way to try to force them to turn over property or give up property that they have no privilege to take. And then when the individuals resisted, the individuals decided to counter the attempts to take from them what they had earned in terms of hard work.   *   *   *
>
> The callousness of this act in terms of how it was constructed and how it was coordinated and facilitated is another relevant factor that the Court uses in determining that a transfer is appropriate.

(Tr. 21.)

{¶42} The Juvenile Court found that only two factors supported retaining jurisdiction: (1) Cleveland had no prior delinquency adjudication, and (2) Cleveland could possibly be rehabilitated in the juvenile system. Cleveland asserts the trial court's findings on the issue of rehabilitation conflict with the court's determination to bindover. Thus, Cleveland argues that the third prong of the amenability inquiry has not been met, that "the child is not amenable to rehabilitation within the juvenile justice system and, to

ensure the safety of the community, the child should be subject to adult sanctions." *Johnson,* 2015-Ohio-96, 27 N.E.3d 9, ¶ 33, citing *Jones,* 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 7.

**{¶43}** The trial court specified that rehabilitation was feasible and that the juvenile system assured public safety:

> [Appellant] is 16 years old [at the time of the hearing], the age of majority is 18. So that's two years. That is I believe what would be a sufficient amount of time to rehabilitate, especially in light of the fact that the Court has jurisdiction over him until he's 21.
>
> If the Court decides not to transfer this matter to the Adult Court, he would have at least five years in the Juvenile Justice System. Those five years would be at The Ohio Department of Youth Services based on the nature of this offense, if he were to be found delinquent.    *    *    *
>
> There is sufficient time to rehabilitate the child within the Juvenile System and the level of security available in the Juvenile System provides a reasonable assurance of public safety. That particular factor the Court finds is relevant and applicable because there is enough time.

(Tr. 20, 24.)

**{¶44}** In weighing the factors, in spite of the rehabilitation possibility, the court deemed it appropriate to consider "the totality" of the evidence submitted to the court that supported, and rebutted, the transfer. The court asserted that bindover was supported by the "severity of the incident," Cleveland's age and involvement in orchestrating the incident, that retaining Cleveland in the juvenile system would "demean the seriousness of the incident," and Cleveland's planning and execution of the incident resulting in the death of McIntosh. (Tr. 24-25). A review of the record demonstrates that five factors

supported bindover, while only two factors supported retaining the Cleveland in the juvenile system.

**{¶45}** The record demonstrates that the Juvenile Court carefully considered the factors of R.C. 2152.12(D) and (E), and "ultimately determined," wholly within the juvenile court's discretion, "that the factors in favor of transfer outweighed the factors in favor" of retaining jurisdiction. "We cannot say that the trial court's decision constitutes an abuse of discretion." *Johnson*, 2015-Ohio-96, 27 N.E.3d 9, at ¶ 44.

**{¶46}** The second assignment of error is overruled.

## IV. Conclusion

**{¶47}** The trial court's judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, A.J., and
SEAN C. GALLAGHER, J., CONCUR